(No. 24288

THE CITY OF CHICAGO, Appellee, *vs.* BEN ALPERT, INC., Appellant.

*Opinion filed February 17, 1938—Rehearing denied April 6, 1938.*

BENJAMIN E. COHEN, and SAMUEL BERKE, (MAYER GOLDBERG, of counsel,) for appellant.

BARNET HODES, Corporation Counsel, (MARTIN H. FOSS, ALPHONSE CERZA, and DAVID LEFKOVITZ, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Ben Alpert, Inc., engaged in the business of parking automobiles on a vacant lot or open space for hire at 401 North Michigan avenue, Chicago, was fined $100 in the

municipal court of Chicago for operating a garage without a license in violation of the public garage license ordinance. The validity of the ordinance being involved an appeal has been prosecuted to this court.

The ordinance describes a public garage as "any building, structure, premises, enclosure, or other place (except a public thoroughfare) within the city, where two or more automobiles, * * * are stored or parked in a condition ready for use; provided, however, that this shall not be deemed to include or to mean any building, structure, premises, enclosure or other place which is hereinafter defined as a private garage." In particular, the ordinance provides that public garages, so characterized, shall include but not be limited to: "1. Premises where two or more automobiles are stored or housed for hire, or where rent or compensation is paid to the owner, manager or lessee of the premises for the housing, storing, sheltering, keeping or maintaining of such automobiles. 2. Premises where two or more automobiles are kept for the purpose of letting for hire or reward, with or without a driver, to be used for the transportation of passengers, goods, merchandise, materials, salvage, waste or rubbish." No person, firm or corporation, the ordinance ordains, shall manage, conduct, operate or carry on the business of a public garage without first having obtained a license. For the purpose of determining the license fee the ordinance divides public garages into two classes. The annual license fee for the first class, which includes all public garages enclosed within garage buildings, is fixed at $25, where the capacity of the building does not exceed twenty-five automobiles, and, in addition, one dollar for each car-capacity in excess of twenty-five. Defendant falls within the second class which includes all public garages not enclosed within a building having four walls and a roof extending from wall to wall, and covering the entire space enclosed by such walls. The annual license fee for this class is $100 where the car-capacity of the premises,

enclosure or other place does not exceed twenty-five automobiles and an additional four dollars for each car-capacity in excess of twenty-five. The penalty section authorizes the imposition of a fine of not less than five nor more than one hundred dollars for each offense, and, further, that every day a violation of the ordinance occurs shall constitute a separate and distinct offense.

The defendant corporation never made application to the city for a license under the ordinance and did not pay the requisite fee. This action and the judgment against it ensued. Defendant insists that an open-air parking lot is not a garage, and that, accordingly, the city lacks power to license and regulate its business. Plaintiff maintains, on the other hand, that the city's power to regulate the public garage business includes the power to license and regulate parking or storing automobiles on vacant lots. Section 82 of article 5 of the Cities and Villages act (Ill. Rev. Stat. 1937, par. 65.81, p. 353) empowers city councils in cities and the presidents and boards of trustees in villages, "To direct the location and regulate the use and construction of breweries, distilleries, livery, boarding or sale stables, blacksmith shops, foundries, machine shops, garages, laundries, and bathing beaches, within the limits of the city or village." The authorization to direct the location and regulate the use and construction of garages is a valid exercise of the police power. (*People* v. *Ericsson,* 263 Ill. 368.) Since the power of a municipality to regulate includes the power to license, (*City of Rockford* v. *Hey,* 366 Ill. 526; *City of Chicago,* v. *Waters,* 363 id. 125; *City of Chicago* v. *Arbuckle Bros.* 344 id. 597;) it follows that the plaintiff was vested with power not only to regulate the public garage business but also to impose an inspection or license fee for the purpose of rendering such regulation effective. The extent of this power requires consideration.

To support its contention that power to pass the ordinance in controversy is wanting, defendant urges that a

vacant lot is not a garage and that, hence, the city cannot regulate and license vacant lots used for the purpose of parking automobiles for hire. The issue presented is, however, whether the city has power to regulate and license an open-air parking space or an "open-air garage" on a vacant lot. The General Assembly, in the quoted delegation of power, did not define "garages" thereby limiting the authority delegated by making the word "garages" a static or dormant concept rendering cities impotent to cope with the ever-changing conditions of a mobile and complex society. In short, cities and villages are not restricted, in directing the location· and regulating the use and construction of garages, to such premises as may have conformed to the accepted popular definition of the word "garage" in 1911, when it was incorporated in the statute. Conditions attending the storage and parking of automobiles in metropolitan areas today are vastly different from those prevailing a quarter of a century ago when the State empowered cities to regulate and license garages. It is common knowledge that in cities considerable areas are devoted to parking and storing motor vehicles. Casual observation will disclose that in some instances the premises are denominated parking lots and, in others, outdoor or open-air garages. We are not required to be insensible to this mode of transacting an important part of the automobile business. The express power to regulate the use and construction of garages is sufficiently comprehensive to authorize cities and villages to license open-air as well as closed public garages. A legitimate exercise of this power is immune from constitutional assault.

The ordinance is replete with regulatory provisions and is, therefore, free from defendant's attack that it is solely a licensing ordinance passed for revenue purposes. Before a license issues the applicant must obtain the approval of the commissioner of police, the commissioner of buildings, the chief fire prevention engineer and the superintendent of the

department of license. A comprehensive location and frontage consents section is incorporated in the ordinance. Another section prescribes that all public garages must be conducted in conformity with the provisions in part 10 of the ordinance and inspected by the chief fire prevention engineer or his duly authorized representative at least once every six months. The requirements incorporated by reference cover the whole field of fire prevention. Smoking in public garages is prohibited. The foregoing provisions suffice to demonstrate that the ordinance is essentially a regulatory measure. A mere probability that the license fee exacted may exceed the reasonable expense of issuing the license and inspecting the business does not render the fee illegal or unreasonable. (*City of Chicago* v. *Arbuckle Bros. supra; Kinsley* v. *City of Chicago,* 124 Ill. 359.) The ordinance rests upon an express grant of power to regulate the public garage business and to impose license fees both for regulation and revenue. In the absence of a showing that the fees collected exceed the reasonable expense of regulation or that they are imposed solely for the purpose of raising revenue, the amount of a license fee is a matter for the city council to determine in the exercise of a sound legislative discretion.

Defendant's third contention that the ordinance unlawfully discriminates against persons engaged in the business of parking automobiles on vacant lots and, in consequence, violates the equal protection of the laws provision of the Federal constitution and the due process of law guaranty of our State constitution has been decided adversely to it. *Stearns* v. *City of Chicago, (ante,* p. 112.)

The remaining contention which requires consideration is that the ordinance constitutes an arbitrary and illegal delegation of legislative power to administrative officers in dealing with applications for licenses. To support its contention, defendant argues that because the word "approved" in the expression "every such application shall be approved"

is not defined, the ordinance sets no standard either for the application itself or for the conduct of the administrative officers named, in approving or rejecting applications. Where words assailed, taken in connection with the context, are commonly understood, their use does not render a statute invalid. (*Triner Corp.* v. *McNeil*, 363 Ill. 559.) Moreover, the legislature is not required to define words in common and daily use. (*People* v. *Lloyd*, 304 Ill. 23.) The word "approved," within the contemplation of the ordinance, obviously means approved or passed in conformity with the applicable requirements of the municipal code. The presumption obtains that public officials will comply with rather than disregard the law. If a license should be denied an eligible applicant whose proposed premises satisfy the requirements of the ordinance, it follows necessarily that a legal remedy would be available. The challenged ordinance falls within the familiar rule that although a legislative body cannot delegate its own inherent function of determining what the law shall be it may, nevertheless, delegate to others the power to do those things which it might properly but cannot understandingly or advantageously do itself. (*City of Rockford* v. *Hey, supra; Lydy Inc.* v. *City of Chicago*, 356 Ill. 230; *Welton* v. *Hamilton*, 344 id. 82.) Specifically, an authority or discretion conferred as to the execution of the law, to be exercised under and conformably to the law, is unobjectionable. 1 Lewis' Sutherland on Stat. Const. (2d ed.) sec. 88; *Parks* v. *Libby-Owens-Ford Glass Co.* 360 Ill. 130.) Defendant's contention that the ordinance delegates legislative power is without merit.

The judgment is affirmed.

*Judgment affirmed.*