(No. 24744.—

THE PEOPLE ex rel. Edward J. Barrett, Auditor of Public Accounts, Appellee, vs. THE LOGAN COUNTY BUILDING AND LOAN ASSOCIATION, Appellant.

*Opinion filed October 17, 1938.*

Trapp & Trapp, and Frank Lindley, for appellant.

Otto Kerner, Attorney General, (P. C. Otwell, of counsel,) for appellee.

Mr. Justice Wilson delivered the opinion of the court:

On September 11, 1935, the Auditor of Public Accounts assumed control of the Logan County Building and Loan Association, hereafter called the respondent. An examination of the association's affairs made on behalf of the Auditor disclosed that its capital had been seriously impaired and, on September 27, he appointed David H. Harts, as receiver, for the purpose of liquidating the association through a receivership. Harts acted as receiver until June 19, 1936, when he resigned. Thomas F. Walsh was appointed to succeed him. On August 1, 1936, at the direction of the Auditor, the Attorney General filed a complaint in the name of the People of the State of Illinois in the circuit court of Logan county against the association, charging an impairment of its assets to the extent that they were insufficient to pay creditors in full and return to the shareholders the dues paid on their shares, with interest at two per cent per annum for the average time invested, and, further, that the business of the association had been conducted in a fraudulent, illegal, discriminatory and unsafe manner, and praying for its dissolution. Subse-

quently, an amended complaint was filed. By a motion to dismiss respondent challenged the validity of the act in relation to mutual building, loan and homestead associations, effective July 1, 1919, as amended, (Ill. Rev. Stat. 1937, p. 838,) and section 38, in particular. It also charged that the receiver was a necessary party to this action. The motion was denied. Thereafter, respondent answered, but, on the day set for the hearing, withdrew its pleading and elected to abide by its motion to dismiss. Evidence to sustain the allegations of the complaint with respect to the financial condition of respondent was introduced over its objection. An audit report of certified public accountants and explanatory testimony showed a serious impairment of capital, as charged by the Auditor, liabilities exceeding assets by $102,036.92. The testimony also disclosed that the association had made forty-four real estate mortgage loans to a former secretary on fourteen pieces of property in the city of Lincoln. He owed $128,700 in principal on September 27, 1935. Competent appraisers placed a valuation of $51,462 on the property securing the indebtedness. After hearing testimony, the chancellor rendered a decree confirming the findings of the Auditor with respect to the impairment of the capital stock of the association, finding that it was insolvent, that a large deficit existed and that its capital had been impaired to such an extent that it would have been unsafe for the Auditor to have permitted the association to continue operation. The decree adjudged, in part, that upon the payment of creditors' claims previously approved or adjudicated and the expenses of the receivership, that the receiver report the amount of the remainder to the court for its further order and direction, and, that upon the settlement of the affairs of the association and the final report of the receiver, the Auditor and the receiver give notice by publication as required by law in order to terminate the corporate existence of the association. Respondent appeals directly to this court, ques-

tions involving the construction of the constitution being presented for decision.

To obtain a reversal respondent makes the contention, among others, that section 38 of the Building and Loan Association act constitutes an arbitrary and illegal delegation of legislative and judicial power to the Auditor in contravention of article 3 of our constitution. To sustain the decree the relator maintains that the statute constitutes a valid exercise of the police power of the State. A review of the liquidation provisions of the statute becomes necessary to determine the constitutional issues.

Section 38 (Ill. Rev. Stat. 1937, p. 852) so far as pertinent, empowers the Auditor to take possession and control of the books, records and assets of an association for the purpose of further examination, and the conservation of its assets if it appears from reports made to him, or from examination made by or on his behalf, (1) that the capital of any association doing business in this State is impaired to the extent that the realizable value of its assets is insufficient to pay its creditors in full and return to the shareholders the dues paid on their shares, with interest thereon at the rate of two per cent per annum for the average time invested; (2) that the business of any association is being conducted in a fraudulent, illegal, discriminatory or unsafe manner; (3) that any director or directors, officer or officers, have neglected, failed or refused to take any action which the Auditor may deem necessary for the protection of the interests of shareholders; (4) that any officer or officers, employee or employees, have continued to assume duties or perform acts without giving bond as required by the provisions of the statute, or (5) that the directors or officers neglect, fail or refuse to institute and prosecute any action or to do any act which he, the Auditor, may deem necessary for the protection and safeguarding of the interests of shareholders, or for the conserving or proper management of assets. If the Auditor, in his discretion, the

section provides further, believes that it would not be for the best interests of the shareholders to redeliver possession of the books, records and assets, he may forthwith appoint a receiver for the purpose of liquidation, requiring of the appointee such bond and security, as he, the Auditor, deems proper. The Auditor, immediately upon the appointment of a receiver, is directed to file with the recorder of deeds of the county in which the association is located a notice of his action, and any authority of the directors and officers of the association, shall be suspended unless and until the assets of the association are later redelivered to, and their management restored in, the directors and officers. Notice of the appointment of the receiver was filed with the recorder of deeds of Logan county on September 28, 1935.

Section 39 prescribes that where a receiver has been appointed by the Auditor, conformably to section 38, the receiver, under the direction of the Auditor, shall take possession of and, for the purpose of the receivership, the title to the books, records and assets of the association. The Auditor shall direct the Attorney General to file a bill in the circuit court of the county in which the association is located, section 39 adds, in the name of the People of the State of Illinois against the association for its dissolution, and for an injunction restraining the officers and directors from continuing its operation. Section 40 authorizes the receiver to proceed, among other things, to collect all debts and claims belonging to the association, and, upon the order of the court having jurisdiction of the receivership, to sell or compound all bad or doubtful debts, and, on a like order, to sell the real and personal property on such terms as the court shall direct. Section 41 provides that from time to time the receiver shall make a ratable dividend of the moneys collected by him on all such claims as may have been proved to his satisfaction and adjudicated in a court of competent jurisdiction, and that, as the proceeds of the assets are collected, he shall make further dividends

on all claims previously proved or adjudicated. Section 42 provides for the payment of the expenses of the receivership out of the assets of the association. Upon the final report of the receiver to the court having charge of the liquidation, upon petition of the receiver and Auditor, represented by the Attorney General, the court, it is provided, may enter an order finding that the association should be dissolved, and, upon notice by publication, in a newspaper located in the county in which the association has its principal place of business, once each week for three consecutive weeks, may enter a decree of dissolution. Section 43 provides that the Auditor, upon taking possession and control of the books, records or assets of any association, or upon appointing a receiver, shall serve a written notice of the taking of such possession or the appointment of the receiver upon the president or secretary and not less than two directors of the association. The prescribed notices were given. If the association denies that the Auditor has any of the grounds set forth in section 38 for the taking of such possession and control, or the appointment of a receiver, it may, at any time within ten days after the service of such notice, apply to the circuit court of Sangamon county to enjoin further proceedings in the premises. Such court, after citing the Auditor to show cause why further proceedings should not be enjoined, and after a decision that such grounds do not exist, shall make an order enjoining the Auditor and any appointees, and any receiver acting under his direction, from all further proceedings on account of any grounds which the Auditor shall have presented to the court. The respondent association did not avail itself of section 43 by attacking the appointment of the receiver and requiring the Auditor to show cause.

The police power may be exercised not only in the interest of the public health, morals, comfort and safety but also for the promotion of the general welfare. (*Triner*

*Corp.* v. *McNeil,* 363 Ill. 559; *Fenske Bros. Inc.* v. *Upholsterers Union,* 358 id. 239.) Building and loan associations are so organized as to attract the savings of persons of modest means. Confidence is essential to the stability and maintenance of these institutions. Section 1 of the Illinois statute proclaims the purpose of such institutions as the assistance of their members to accumulate and invest their savings, by accumulating a fund from periodical payments on its stock, or otherwise, to be loaned among its members. The rudimentary form of a building and loan association, the United States Supreme Court has declared (*United States* v. *Cambridge Loan and Building Co.* 278 U. S. 55) "is supposed to be a society raising by subscription of its members a fund for making advances to members in order to enable them to build or buy houses of their own. A member is entitled to borrow on sufficient security an amount equal to his subscription for shares and when the shares are paid up by the instalment payments required and the profits of the company his indebtedness is cancelled." *Rhodes* v. *Missouri Savings and Loan Co.* 173 Ill. 621, 629, is to the same effect. Such associations are more than business corporations; they are *quasi*-public corporations, chartered to encourage thrift and promote the ownership of homes, with powers and immunities peculiarly their own. (*Hopkins Federal Savings and Loan Ass'n* v. *Cleary,* 296 U. S. 315.) Because of their *quasi*-public character, the State may, in the exercise of its police power, subject them to a degree of regulation which might well be unnecessary and unreasonable in the case of purely private business corporations. (*Treigle* v. *Acme Homestead Ass'n,* 297 U. S. 189.) In several States the legislatures, recognizing the *quasi*-public character of building and loan associations, have conferred upon administrative officers, as does the law of Illinois, broad powers and duties with respect to supervising the affairs of such associations, examining into their financial condition, and have imposed

upon such officers the duty of seeing that any improper or unsatisfactory condition is remedied or that steps are taken to wind up the corporation expeditiously and economically. (9 American Jurisprudence, "Building and Loan Associations," sec. 8; *State* v. *Court of Common Pleas,* 124 Ohio St. 269, 78 A. L. R. 1079; *Union Savings and Investment Co.* v. *District Court,* 44 Utah 397.) Our General Assembly has long deemed it essential to attempt to protect the public from investing in an insolvent association by providing for adequate supervision of building and loan associations, subjecting them to strict supervision by administrative agencies, not only in the course of doing business but also in the process of liquidation. Although the record before us demonstrates that incompetent, if not dishonest, management can occasionally frustrate even such salutary safeguards as the present law ordains, it, nevertheless, represents a laudable effort to prevent the operation of insolvent associations and, when regulations to accomplish this objective prove inadequate, to protect the public from further opportunities to deal with such companies by providing for their liquidation. Manifestly, when insolvency or other causes render it impossible for an association to continue to perform the functions for which it was created it may be dissolved.

Respondent's contention that its charter is a contract within the protection of the constitutional guaranty against laws impairing the obligation of contracts cannot prevail. All grants, stipulations or restrictions as to corporations are subject to subsequent alteration by general laws enacted under the police power. (*Integrity Mutual Ins. Co.* v. *Boys,* 293 Ill. 307; *Venner* v. *Chicago City Railway Co.* 246 id. 170; *Ward* v. *Farwell,* 97 id. 593.) In the case last above cited, this court, answering a like contention with respect to the validity of an act in regard to the dissolution of insurance companies observed: "Every private corporation, in accepting its charter, impliedly undertakes and

agrees, upon condition of forfeiture, that it will exercise the rights and privileges conferred upon it in furtherance of the objects and purposes of its creation, and not otherwise, and that it will so manage and conduct its affairs that it shall not become dangerous or hazardous to the safety or well being of the State or community in and with which it transacts its business."

Respondent insists that section 38 is a flagrant violation of article 3 of our constitution, delegating both legislative and judicial power to the Auditor. Our attention is directed to the portion of section 38 which authorizes the Auditor, if it appears from reports made to him or from examination made by or on his behalf, that any of the five conditions previously described exist, in his discretion, to assume control of the books and records of a building and loan association for examination and adjustment, and thereafter appoint a receiver. Respondent argues that enforcement of the statute rests in the discretion of the Auditor, unfettered by standards, rules or limitations to guide him in determining whether to redeliver an association's property. While it is true, as respondent maintains, that a legislative body cannot divest itself of its own inherent function of determining what the law shall be, it may, however, delegate to others the power to do those things which it might properly but cannot advantageously do itself. (*City of Chicago* v. *Alpert, Inc.* 368 Ill. 282; *Block* v. *City of Chicago,* 239 id. 251; *People* v. *Reynolds,* 5 Gilm. I.) The basic distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and conformably to the law. The first cannot be done; the latter is unobjectionable. (I Lewis' Sutherland on Stat. Const. (2d ed.) sec. 88; *City of Chicago* v. *Alpert, Inc. supra.*) Five rules are specified in section 38 of the Building and Loan Association law to guide the Auditor in deciding

whether to take possession of an association's assets, to make further examination of its financial condition, and to appoint a liquidating receiver. Adherence to these rules is mandatory in exercising the authority or discretion conferred upon him, under and conformably to the law itself. Existence of any one of the five grounds furnishes sufficient sanction to the Auditor to take possession of the books and records of an association for examination and adjustment, and eventually may authorize the appointment of a receiver. If an association feels aggrieved by the Auditor's actions it is empowered by section 43 to initiate legal proceedings to challenge the exercise of his discretion and to rebut the charge of insolvency. Here, the complaint charged and the decree adjudged only that the first two of the grounds enumerated in section 38 were applicable to respondent. A cardinal canon of statutory construction is that courts do not pass upon the constitutionality of parts of statutes not essential to the determination of questions before them. (*People* v. *Kennedy,* 367 Ill. 236.) Respondent's argument in support of its constitutional objections to the remaining three does not require consideration. *People* v. *Long,* 297 Ill. 194.

One of the grounds authorizing the Auditor to place an association in liquidation is an impairment of its capital to the extent that the realizable value of its assets is insufficient to pay its creditors in full and return to the shareholders the dues paid on the shares, with interest thereon at the rate of two per cent per annum for the average time invested. The insolvency of a building and loan association is recognized as *sui generis.* It may be described as a condition which reduces the available and collectible assets below the level of the stock already paid in, thereby rendering it impossible for the association to pay back to its stockholders the amount of their contributions. (9 American Jurisprudence, *supra,* sec. 86.) In short, it

does not consist in the inability to pay its outstanding debts, but merely in inability to satisfy the demands of its own members by returning the amount of their contributions, dollar for dollar. (4 R. C. L. "Building and Loan Associations," sec. 39; *Warner* v. *Mutual Building and Investment Co.* 128 Ohio St. 37; *Rummen* v. *Home Savings and Loan Ass'n,* 182 Wash. 539, 100 A. L. R. 570; *Mott* v. *Western Savings and Loan Ass'n,* 142 Ore. 344.) Section 38 adopts this familiar base of insolvency as sufficient warrant for the exercise of the discretion lodged in the Auditor. It is apparent respondent was hopelessly insolvent within the meaning of section 38.

Respondent scrutinizes the portion of section 38 which authorizes the Auditor to appoint a receiver where the business of an association is being conducted in a "fraudulent, illegal, discriminatory or unsafe" manner. The words assailed, taken in connection with the context, are generally understood. Their use in section 38 without statutory definition does not render the act invalid. (*City of Chicago* v. *Alpert, Inc. supra; Triner Corp.* v. *McNeil, supra.*) The complaint filed in the present case, and the proof adduced, disclosed a situation squarely within the contemplation of the foregoing language. The relevant portion of section 38 does not constitute an illegal delegation of legislative power to the Auditor.

Section 38, to the extent that it authorizes the Auditor to appoint a receiver of an insolvent association, is also assailed as delegating judicial power to an executive or administrative officer. The Building and Loan Association act vests the administration of the affairs of a financially distressed institution in the Auditor of Public Accounts and confers upon him the exclusive right to appoint a receiver. This statute makes the receiver of an insolvent association an executive or administrative officer subject to judicial supervision by the court in which proceedings for

liquidation and dissolution were instituted under the statute, and not a judicial officer. (*People* v. *Niehaus,* 356 Ill. 104.) Section 38 does not transcend article 3 of the constitution by delegating to the executive department a judicial function.

Respondent also contends that section 38 violates the due process of law provisions of the Federal and State constitutions. The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. (*Martin* v. *Strubel,* 367 Ill. 21; *People* v. *Niesman,* 356 id. 322.) Section 43 provides for a review of the Auditor's appointment of a receiver by the circuit court of Sangamon county, upon application of the association, within ten days after the service of notice of the appointment, as required by section 38, for an injunction against further proceedings. Not only did section 43 afford respondent ample opportunity to resist the appointment of a receiver but an application thereunder to restrain further proceedings would have rendered it mandatory for the circuit court to have cited the Auditor to show cause why further proceedings should not be enjoined. Having failed to directly attack the appointment of a receiver by the only method provided by the statute when the remedy was available, respondent, by its own inaction has precluded itself from assailing the propriety of the Auditor's appointment collaterally in the present proceeding. (*People* v. *Dime Savings Bank,* 350 Ill. 503.) The contention that respondent's property was taken without a hearing is without merit.

Complaint is made that the receiver of the respondent association was not made a party to the proceeding. The receiver appointed by the Auditor takes possession of and, for the purpose of the receivership, the title to all the property of the association. An order of court is, therefore,

not essential to vest title in him. Similarly, judicial confirmation of his appointment is unnecessary since power to appoint is delegated exclusively to the Auditor. Section 39 does command the Auditor, after appointing a receiver conformably to the preceding section, to direct the Attorney General to file a bill against the association for its dissolution. This was done. No duty, statutory or otherwise, rested upon the Auditor, however, to make the receiver he had appointed for respondent a party to this action. The basic purpose of the suit instituted by the Auditor was the ultimate dissolution of the respondent association and the 'settlement of its affairs. The Auditor presented his subordinate, the receiver, to the court having charge of the liquidation of the association for the purpose, only, of obtaining advice and direction from time to time, so that liquidation could proceed in orderly fashion and dissolution of the association be accomplished with reasonable dispatch. Respondent's complaint that the receiver was a necessary party to the action is not well taken.

The remaining contention which requires consideration is that the taking of evidence was improper because of respondent's election to stand by its motion to dismiss. By withdrawing its answer respondent admitted the allegations in the complaint, also incorporated as findings in the decree. Clause 6 of section 50 of the Civil Practice act (Ill. Rev. Stat. 1937, p. 2398) provides: "Judgment by default or a decree *pro confesso* may be entered for want of an appearance, or for failure to plead, but the court may in either case, require the plaintiff to prove the allegations of his complaint." The chancellor was, accordingly, vested with discretion to require additional proof concerning the deplorable financial condition of the respondent association as a basis for the decree finding it insolvent within the contemplation of the statute and ordering its dissolution. In the *praecipe* for record filed by respondent it asked for a

complete authenticated transcript of the record including: "3. All motions and all orders in the said cause and all other papers of record in said cause." The exhibits and the testimony concerning respondent's financial condition were not, however, included in the record which it filed in this court. On June 4, 1938, permission was granted to relator to supply an additional record consisting of all the testimony and exhibits introduced at the hearing. The effect of the allowance of the motion was merely to add portions of the record which had been omitted by the circuit court clerk. Respondent's motion objecting to the order of June 4, taken with the cause on June 16, is, accordingly, denied.

The decree of the circuit court is affirmed.

*Decree affirmed.*