Edward R. Bacon Grain Co., et al., Appellees, v. City of Chicago et al., Appellants.

Gen. No. 43,335.

Heard in the first division of this court for the first district. Opinion filed February 21, 1945. Rehearing denied March 14, 1945. Supplemental opinion filed March 14, 1945. Released for publication March 14, 1945.

BARNET HODES, Corporation Counsel, for appellants; MARTIN H. FOSS, Assistant Corporation Counsel, of counsel.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellees; JOSEPH B. FLEMING, WILLIAM H. SYMMES and EDWARD C. CALDWELL, all of Chicago, of counsel.

MR. PRESIDING JUSTICE NIEMEYER delivered the opinion of the court.

This is an interlocutory appeal from an order temporarily restraining the City of Chicago and its of-

ficers from enforcing against plaintiffs an ordinance of the city (sections 134–1 to 134–5, inclusive, of the Municipal Code as amended December 15, 1943) which required a license to conduct or operate a grain elevator, and the payment of a license fee of $300 annually for elevators having a capacity of not more than one million bushels, and $600 for elevators having greater capacity.

The plaintiffs, a partnership and 12 corporations, operate 20 grain elevators or warehouses in Chicago having an aggregate storage capacity of approximately 35,000,000 bushels. Twelve of the elevators were licensed under the United States Warehouse Act, three under the Illinois Warehouse Act, and the remaining five were not licensed to store grain for the public. The grain stored is alleged to be "in the flow of interstate commerce subject to regulation by congress." The complaint as amended charged that the ordinance was invalid and the license fee unreasonable and exorbitant. In this court the alleged invalidity of the ordinance is put upon the ground that the city is without power to pass the ordinance because there is no provision in the Cities and Villages Act which empowers the city to license grain elevators; the ordinance is in direct conflict with federal and state statutes, and the license fee provided for by the ordinance is an unconstitutional burden on interstate commerce.

The ordinance in question has been in force for a number of years. The amendment in December 1943 increased the annual license fees from $100 and $200, to $300 and $600. This increase in the license fee caused the attack on the ordinance. It provides that no person shall conduct or operate a grain elevator within the city without first obtaining a license therefor; that upon receipt of an application for license the division marshal in charge of the bureau of fire prevention shall make an investigation for the purpose

of ascertaining whether or not the building or structure in which it is desired or intended to conduct a grain elevator is so situated that it would not be so dangerous as to constitute a nuisance or be a menace to the safety of the public or to the adjoining property; that the division marshal shall also investigate to see that proper measures are taken to reduce the fire hazard due to the heating of grains and the possibility of spontaneous combustion and explosion, and shall periodically inspect grain elevators for the purpose of determining whether the same comply with all of the fire regulations of the Municipal Code applicable thereto.

Defendants by their sworn answer take the position that the ordinance is a regulatory measure lawfully enacted by the city as a protection against the extra fire and explosion hazards arising from the operation of a grain elevator due to dust explosions and the likelihood of the grain stored in such elevators becoming heated and through chemical changes igniting and exploding by the physical phenomenon known as spontaneous combustion; that such grain elevators are classified as hazardous use units and constitute one of the greatest fire and explosion hazards with which the city and its fire and police departments have to cope; that there are within the City of Chicago approximately 41 grain elevators, having an aggregate storage capacity of approximately 47,757,000 bushels; that the approximate money value of the grain stored in said elevators in any one day of the year exceeds $75,670,000; that the fire department of the city, and particularly its fire prevention bureau, have given particular study and attention to the prevention of dust explosions and spontaneous combustion of grains in such elevators, and many regulatory provisions have been enacted by the city to prevent or neutralize the hazards of fire or explosions in such elevators. The

temporary injunction was issued on the complaint, answer, and supporting affidavits filed by the respective parties.

In *Arnold v. City of Chicago,* 387 Ill. 532, the court reviewed the sources pertaining to the power of municipalities to license, regulate and tax occupations, and said (p. 537): "Thus we see that local municipalities derive not only their existence but all their powers from the General Assembly, and having no inherent power they must always be able to point to the particular statutory provision giving them authority to legislate on a particular subject." Defendants refer to a number of sections of article 23 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1943, ch. 24 [Jones Ill. Stats. Ann. 21.1632 *et seq.*]) as supporting the right of the city to pass the ordinance under consideration. Principal reliance is placed upon section 23-75, which empowers cities and villages "To regulate and prevent the storage of turpentine, tar, pitch, resin, hemp, cotton, gunpowder, nitroglycerine, petroleum, or any of their products, and other similar combustible or explosive material." This section is substantially identical with paragraph 65.64 of the preceding Cities and Villages Act, which specified all of the materials enumerated above, and, in addition, coal oil and benzine, which were omitted from the revised act. The materials named are not confined to any particular class. They embrace solids and liquids, products of the field, things taken from the earth, and the products of distillation and manufacture. Grain is closely related to hemp and cotton, and is highly combustible and explosive. The phrase "other similar combustible or explosive material," as used in the foregoing sections of the Cities and Villages Acts, has not been construed by our courts of review, but in the case of *Chicago Cosmetic Co. v. City of Chicago,* 374 Ill. 384, in holding that the city had power to regulate and license the manufacture of cos-

metics, perfumes, etc., the court referred to various
sections of the then controlling Cities and Villages
Act, including paragraph 65.64, granting powers to
cities, and in speaking of the bases of power for the
ordinance under consideration said (p. 393): "The
use of petroleum products, alcohol (not named in the
statute) and other inflammable or explosive substances
in such business enterprises is one basis . . ."
It seems plain to us that by section 23–75 and former
paragraph 65.64 the legislature intended to vest mu-
nicipalities with power to protect themselves against
the hazards of fire and explosion arising from the
storage of combustible or explosive material; that
this power of protection was intended to be full, not
partial, and to extend to the regulation of the storage
of all combustible or explosive materials, and there-
fore, as said by defendants, ". . . the similarity
which the legislature had in mind was not that found
between substances, or between liquids, or between
plants, or between manufactured products, but was a
similarity in combustibility, inflammability or explo-
siveness." The power to license is an incident to the
power to regulate. *City of Chicago v. Arbuckle Bros.,*
344 Ill. 597, 602; *Great Atlantic & Pacific Tea Co. v.
Grosjean,* 301 U. S. 412, 426.

█ But plaintiffs say that the ordinance is not
regulatory, but is purely a revenue measure. This
contention is based upon the claim that the inspections
required under the ordinance are merely inspections
required under provisions of the building code of the
city. Numerous sections of the Municipal Code are
referred to. All except section 101–29 are parts of
the building code. Section 101–29 requires inspection
of hazardous use units (which include grain elevators)
by the marshal of the bureau of fire prevention, and
a certificate from him before the granting of any li-
cense to engage in any business, occupy or use any
premises, structure or building for any purpose classi-

fied as a hazardous use unit, but no provisions of the code other than the ordinance before us are pointed out which require inspections in the regulation or prevention of grain dust accumulations, heating of grain, etc. Many of the general provisions of the building code and of fire ordinances are applicable to grain elevators and warehouses, but in the storage of grain there are hazards from spontaneous combustion and dust explosion peculiar to that business, requiring special regulations and inspections to prevent and neutralize those hazards. It was this condition peculiar to the storage of grain that the ordinance was designed to meet. As said in *Klever Shampay Karpet Kleaners v. City of Chicago,* 323 Ill. 368, 374: "The record warrants the conclusion that the business creates greater danger of fire than other businesses using large quantities of inflammable liquids and justified classifying the dry cleaning business as a special subject of regulation to prevent fires, and the power to adopt reasonable and proper ordinances for that purpose is a necessary incident to the exercise of the powers expressly granted. The fact, if it is a fact, as contended by the appellant, that many of the provisions of the general ordinances upon the subject of the use of large quantities of inflammable liquids are similar to the dry cleaning ordinance cannot affect the validity of the latter."

The ordinance is not rendered invalid by provisions of the state constitution relating to warehouses, or by legislation under that provision. Article 13 of the Constitution of 1870, relating to warehouses, contains provision for the protection of producers, shippers and receivers of grain from misconduct in the storage, mixing, grading or weighing of grain, or in respect to receipts issued for grain stored. By section 6 and 7 the legislature is enjoined to pass all necessary laws to prevent the issue of false and fraudulent warehouse receipts, and for the inspection of grain for the protection of producers, shippers and

receivers of grain or produce, and to give full effect to article 13, ''which shall be liberally construed so as to protect producers and shippers.'' Legislative action under article 13 has been designed to secure that protection. . We find no legislation prescribing regulations for the purpose of preventing or neutralizing dangers from spontaneous combustion, dust explosions, etc., and are referred to no regulation by any administrative officer or body for that purpose. There is no conflict between the ordinance and the constitutional and legislative provisions relating. to warehouses. The latter cover the conduct of the business and the dealings of the warehouseman with the producer, shipper and receiver of the grain stored with him. The ordinance is merely a police regulation to protect the grain and warehouse from damage or de-. struction through fire or explosion. The regulations of the municipality must yield to state legislation when there is a conflict, but the mere fact that the state has legislated upon a particular subject does not necessarily deprive the city of its power to deal with the subject by city ordinance. *Crackerjack Co. v. City of Chicago,* 330 Ill. 320, 325–326; *Chicago Cosmetic Co. v. City of Chicago,* 374 Ill. 384, 393.

Plaintiffs place great reliance upon the case of *In re Farmers Cooperative Ass'n,* — S. D. —, 8 N. W. (2d) 557, decided by the Supreme Court of South Dakota in March 1943. That case involved the validity of an Act of the state legislature prescribing over-all regulation of the business as to the storage, grading, mixing, weighing, etc., of grain, and the receipts issued therefor. The Act was similar in scope to the United States Warehouse Act, the aim of which is to secure fair and uniform business practices, and to facilitate and safeguard commerce in agricultural products. This decision and the argument of plaintiffs predicated thereon might be applicable if we had under consideration Illinois state legislation relative to the warehousing of grain, which covers substantially

the same field as the South Dakota and federal legislation, but they are totally inapplicable when applied to an ordinance like the one before us, which attempts to deal only with conditions in the building affecting fire and explosion hazards and which is designed, not to regulate the occupation of warehousemen as such, but the place in which the grain is stored. *City of Chicago v. R. & X. Restaurant,* 369 Ill. 65, 68. The same principles apply when the ordinance is considered in relation to the United States Warehouse Act. In *Kelly v. State of Washington ex rel. Foss Co.,* 302 U. S. 1, the court said (pp. 9, 10) : "Under our constitutional system, there necessarily remains to the States, until Congress acts, a wide range for the permissible exercise of power appropriate to their territorial jurisdiction although interstate commerce may be affected. *Minnesota Rate Cases,* 230 U. S. 362, 402. States are thus enabled to deal with local exigencies and to exert in the absence of conflict with federal legislation an essential protective power. And when Congress does exercise its paramount authority, it is obvious that Congress may determine how far its regulation shall go. There is no constitutional rule which compels Congress to occupy the whole field. Congress may circumscribe its regulation and occupy only a limited field. When it does so, state regulation outside that limited field and otherwise admissible is not forbidden or displaced. The principle is thoroughly established that the exercise by the State of its police power, which would be valid if not superseded by federal action, is superseded only where the repugnance or conflict is so 'direct and positive' that the two acts cannot 'be reconciled or consistently stand together.' " See also *The Minnesota Rate Cases,* 230 U. S. 352; *Townsend v. Yeomans,* 301 U. S. 441.

■ ■ The plaintiffs operating under a license issued by the Secretary of Agriculture pursuant to the

United States Warehouse Act are in no better position than the other plaintiffs. That license does not exempt the holder from proper state license tax or regulation. *Federal Compress & Warehouse Co. v. McLean,* 291 U. S. 17; *Union Brokerage Co. v. Jensen,* 322 U. S. 202. The federal control of interstate commerce does not preclude local police regulations covering matters as to which Congress has not acted. In *California v. Thompson,* 313 U. S. 109, 113, the court said: "As this court has often had occasion to point out, the Commerce Clause, in conferring on Congress power to regulate commerce, did not wholly withdraw from the states the power to regulate matters of local concern with respect to which Congress has not exercised its power, even though the regulation affects interstate commerce. Ever since *Willson v. Black Bird Creek Marsh Co.,* 2 Pet. 245, and *Cooley v. Board of Port Wardens,* 12 How. 299, it has been recognized that there are matters of local concern, the regulation of which unavoidably involves some regulation of interstate commerce, but which because of their local character and their number and diversity may never be adequately dealt with by Congress. Because of their local character, also, there is wide scope for local regulation without impairing the uniformity of control of the national commerce in matters of national concern and without materially obstructing the free flow of commerce which were the principal objects sought to be secured by the Commerce Clause. Notwithstanding the Commerce Clause, such regulation in the absence of Congressional action has, for the most part, been left to the states by the decisions of this Court, subject only to other applicable constitutional restraints." The ordinance before us is a police regulation of a strictly local character, intended to protect the city, its people and property from fire and explosion arising out of the maintenance and operation of warehouses. It applies alike to all ware-

house operators, whether engaged in intrastate or interstate commerce. It is not in conflict with the Commerce Clause of the constitution or any federal legislation or regulation. It must be upheld unless the annual license fee is, as claimed by plaintiffs, excessive and disproportionate to the expense of regulation.

■■ The matter of fixing the amount of a license fee is for the city council in the exercise of a sound legislative discretion. *City of Chicago v. Ben Alpert, Inc.,* 368 Ill. 282, 287. The same rule prevails in the federal courts. In considering the validity of state legislation for the inspection of oil, gasoline, etc., the court in *Pure Oil Co. v. Minnesota,* 248 U. S. 158, in speaking of plaintiff's claim that the inspection charge was so excessive as to render the act a revenue measure, said (pp. 162, 163): "In the consideration of this question the discretion of the legislature in determining the amount of the inspection fee will not lightly be disturbed. Its determination is *prima facie* reasonable and the courts will not 'enter into any nice calculation as to the difference between cost and collection; nor will they declare the fees to be excessive unless it is made clearly to appear that they are obviously and largely beyond what is needed to pay for the inspection services rendered.' *Foote & Co. v. Maryland,* 232 U. S. 494, 504, and *Western Union Telegraph Co. v. New Hope,* 187 U. S. 419." On the motion for a temporary injunction there were no facts before the court showing that the fee charged was unreasonable or excessive. The burden of making this showing rested upon the plaintiffs.

■ The ordinance being a valid regulatory police measure, the temporary injunction was improvidently issued. The order appealed from is reversed.

*Order reversed.*

MATCHETT and O'CONNOR, JJ., concur.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

In their petition for rehearing plaintiffs erroneously contend that the court has determined the issues raised by the pleadings and for the settlement of which the case has been referred to a master in chancery. Our decision was based upon the record before us. We held that the ordinance was a valid exercise of police power designed to give protection against fire and explosion, and that its enforcement should not be temporarily enjoined. *Cleaners Guild of Chicago v. City of Chicago*, 312 Ill. App. 102. In the proceedings before the master each party may present such competent evidence as is deemed advisable. The trial court will then determine all issues of fact on the record then presented to it, uninfluenced by the opinion of this court on the interlocutory appeal. *Cummings-Landau Co. v. Koplin*, 386 Ill. 368.

The petition for rehearing is denied.

*Petition denied.*