**City of Marquette Heights, Plaintiff-Appellee, v. Charles F. Vrell, et al., Defendants-Appellants.**

**Gen. No. 10,216.**

Third District.

May 15, 1959.

Rehearing denied September 11, 1959.

Released for publication September 11, 1959.

255

Elmo Koos, of Peoria, for appellants.

Dunkelberg & Rust, of Pekin, and Brunsman & Giffin, of Springfield, for plaintiff-appellee.

JUDGE CARROLL delivered the opinion of the court.

These actions were originally brought in a justice of the peace court to recover certain monthly maintenance charges allegedly owed by defendants as lot owners in a subdivision, known as Marquette Heights, under covenants running with the land as set forth in a Declaration of Restrictions executed by the subdividers of said subdivision.

In each case judgment for plaintiff was rendered in the justice court and defendants perfected an appeal to the Circuit Court of Tazewell County. The causes were consolidated in the Circuit Court and a trial de novo resulted in the entry of judgment against defendants Durham in the amount of $30 and costs and against defendants Vrell in the amount of $36 and costs. From such judgments the defendants have prosecuted this appeal.

The facts do not appear to be in dispute and are substantially that in 1948 Brynes-Peoria Community, Inc. owned a tract of land in a unincorporated area of Tazewell County which it was then platting as a subdivision and which was designated on the plats thereof as Marquette Heights; that on July 29, 1948, said Byrnes-Peoria, Inc. (referred to herein as the Company) filed with the Recorder of Deeds of Tazewell County a Declaration of Restrictions imposing upon and charging the lots in said subdivision with

256

certain restrictions, conditions and charges; that said Declaration provides that as soon as there are 100 single family residences in Marquette Heights occupied by home owners, the Company, its successors or assigns, shall select 4 home purchasers to serve along with the Company on a five membership community committee to perform the duties and functions required of such committee under the provisions of the said Declaration; and that until the formation of said committee, the Company alone shall constitute such committee. Subdivision IX of the Declaration imposes certain maintenance charges on the lots in the subdivision and reads as follows:

"Sub-Division IX. Maintenance Charges. All the land included and shown on Parcels I to IV inclusive, except Block 18–B, Parcel III, designated Community Center, and improved by residential, non-commercial or commercial buildings whether owned by the Company or by others, shall be subject to an annual maintenance charge at the rate of $2.50 per month or $30.00 per year for each lot improved by a single family dwelling; 3¢ per year per square foot of area for so much of the land in each block as is devoted to and improved by multi-family dwellings, apartments, or commercial structures; said charge shall be for each calendar year commencing with 1949 for the purpose of creating a fund to be known as the Maintenance Fund to be paid to Committee annually in advance of the first day of January of each year by the respective owners of the improved land on which buildings have been completed. Such annual charge may be adjusted from year to year by the Committee in its sole and absolute judgment and discretion as the needs of the property may require but in no event may such charge be raised by the Committee more than 20% above the rates set forth herein without the approval of a majority of the owners of the improved lots.

"The Committee agrees to apply the total fund from said charges so far as adequate and sufficient towards the payment of the maintenance expenses incurred for the following purposes, but not limited to the following: (1) lighting, improving, and maintaining streets and parks; (2) operation and maintenance of storm-water drains; (3) collecting and disposing of garbage, ashes and rubbish; (4) employing policemen and watchmen and fire protection; (5) for caring for vacant and untended land including removing grass and weeds therefrom and doing anything necessary or desirable in the opinion of the Committee to keep the property neat; (6) for the expenses incident to the examination of plans and enforcement of these restrictions; (7) for taxes and assessments if any, that may be levied by any public authority upon the Community Center, Block 18–B, or any streets, parks or other common areas.

"The Committee need not duplicate and need not obligate itself to provide any of the services mentioned above as may or can be provided by some public agency.

"The annual charge for maintenance shall be liens or encumbrances on the land and acceptance of each of the several deeds shall be construed to be a covenant to pay said charges. The Committee shall have the right to prosecute actions or suits necessary for the collection of such charges and abate any violations of the covenants. Such covenants shall run with the land and be enforceable by the Company and by any owners or occupants."

It is the charges specified in said Subdivision IX which are involved in these actions.

The said Declaration also contains the following provision:

"Any or all of the rights, powers, titles, easements and estates reserved and given to the Company or

Committee in this deed may be assigned to any one or more corporations or associations that will agree to assume said rights, powers, duties and obligations and carry out and perform the same. Any such assignment or transfer shall be made by appropriate instrument in writing in which the assignee or transferee shall join for the purposes of evidencing its consent to the acceptance of such rights and powers; and such assignee or transferee shall thereupon have the same rights and powers and be subject to the same obligations and duties as are herein given to be assumed by the Company, the Company thereupon being released therefrom."

One of the Committee's duties was that of passing upon all plans and specifications for structures erected in the subdivision and no building could be constructed or altered without the approval of the Committee. Other duties included fixing setback lines and to approve, specify and limit the non-residential or Community uses to which buildings erected on land reserved on the plat for such uses might be put and to execute deeds or other instruments evidencing its decisions in such cases.

On January 14, 1957, Marquette Heights Community Committee executed an assignment of the Declaration to the City of Marquette Heights which had been incorporated in June of 1956 and which embraced the area constituting Marquette Heights Subdivision. The assignor in said assignment was the Community Committee appointed by Draper & Cramer, Inc., which organization had apparently been employed as an administrator by the subdividers. The connection of the latter concern with the subdivision management is not made clear. There appears in the record a certificate of dissolution showing that Byrnes-Peoria Community, Inc. was dissolved on November 6, 1952. In 1956 there were about 480 homes in the subdivision but the record fails to show the selection of a Com-

munity Committee as provided by the Declaration. After the assignment to it, the City took over the collection of the maintenance charges specified in Subdivision IX of the Declaration. It expended the monies so collected for general corporate purposes. It also levied a property tax for such purposes to the limit provided by law. It also received and disbursed motor fuel, franchise and sales taxes.

The defendants who own homes in the Marquette Heights Subdivision refused to pay the City the monthly maintenance charges provided in the Declaration and this litigation ensued.

One of the points raised by defendants is that the plaintiff was without power to enter into the assignment contract with the Marquette Heights Community Committee and therefore could not assume the authority to collect the maintenance charges or obligate itself to perform the duties enjoined upon the Community Committee by the Declaration of Restrictions.

██ In Illinois, a city has only such powers as are expressly delegated to it by the General Assembly or are necessarily implied in order to render a specific power effective. Section 23—1, Chap. 24, Illinois Revised Statutes provides as follows: "The corporate authorities of a municipality shall have the powers enumerated in Sections 23-2 to 23-113 inclusive." The Statute then specifies over 100 legislative powers which have been granted to cities. It has been held that a city has no inherent power and must always be able to point to the statutory provision giving it the particular power which it seeks to exercise. Edward R. Bacon Grain Co. v. Chicago, 325 Ill. App. 245; Chicago v. Barnett, 404 Ill. 136.

By virtue of the assignment to it the plaintiff succeeded to all the "rights and powers, titles, easements and estates reserved and given to the Company or Community Committee by the Declaration of Restrictions," and as assignee, plaintiff City became subject

to the same obligations and duties as were assumed by the Company under the Declaration and the Company or Committee was thereupon released from such obligations and duties. Thus for all intents and purposes the City became a party to an agreement with the homeowners in the Marquette Heights Subdivision. In other words, as the result of a contract with private individuals, plaintiff became a participant in an undertaking unrelated to the affairs of the City but obviously having for its purpose the promotion and development of Marquette Heights Subdivision. Although plaintiff insists it had power to enter into such a contract, it has failed to cite the section of the Cities and Villages Act delegating to it the authority for such action. Our examination of said Act has failed to disclose any provision upon which plaintiff might base its contention that it possessed the power exercised in accepting the said assignment.

■■ The validity and enforceability of the covenants imposed by the Declaration is not the determinative factor in deciding the question as to whether the power exercised by the plaintiff has been expressly delegated to it by the legislature. Likewise, the statutory provision that a city may in its corporate name contract and be contracted with is without significance in determining whether it has the power to enter into a particular contract. It can make no contract regardless of the subject matter thereof which is beyond the scope of the powers delegated to it by the Statute.

In addition to plaintiff's obvious lack of authority to accept the assignment, there likewise appears to be a serious question as to the authority of the Community Committee to assign the Declaration to a municipal corporation. The Declaration which is an agreement between the Company and those purchasing property in the Subdivision, recites in substance that the interest of the Company or Committee created by the Declaration may be assigned "to anyone or

261

more corporations or associations that will agree to assume and carry out the provisions thereof." The said Declaration also provides that the covenants thereof shall be binding upon all parties thereto and persons claiming under them (which would include the plaintiff) until January 1, 1969 at which time they shall be automatically extended for successive periods of 10 years unless by a majority vote of the owners it is agreed to change them in whole or in part. Although this provision permits modification of the Restrictions of the Declaration, it fails to provide for any change in the duration of the duties and obligations of the Committee or its successors. As a result, an assignee of the Declaration would according to the terms thereof, obligate itself to perform thereunder in perpetuity, regardless of modifications deemed necessary by the City's governing body in the future. It is also to be noted that by the terms of the Declaration the Committee agrees to apply the funds resulting from the maintenance charges to expenses incurred for certain specified purposes including "taxes and assessments, if any, that may be levied by any public authority upon the Community Center, Block 18–B, or any streets, parks or other common areas." Thus the City may use maintenance funds to pay taxes which it levies and may use for any corporate purpose.

When the above provisions and others found in the Declaration are considered in connection with the fact that the purpose of the restricting covenants was the development of a subdivision, there is a clear indication that it was the intention of the parties thereto to authorize only an assignment to a corporation or association qualified to undertake the supervision and management of a subdivision project. The nature of the subject matter, the reference to corporations or associations, the provision for the payment of taxes on certain areas in the subdivision and the na-

262

ture of the duties devolving upon the assignee would seem to compel rejection of the contention that the words "corporations or associations" as used in such Declaration include a city.

In addition to collecting the maintenance charges provided by the Declaration, the plaintiff levies taxes for corporate purposes to the limit allowed by law. Plaintiff admits that the maintenance funds are used to defray the cost of the same services for which taxes are levied. As a result of this unique program of municipal financing, the defendants and others in like position are in effect being taxed twice for the municipal services rendered to them. Plaintiff insists that the monies collected from defendants from maintenance charges are not taxes but arise from an agreement between the parties. This argument is not persuasive. Whether these monies are designated as taxes or as maintenance charges, nevertheless the same are collected by the municipality and used to defray the expense of the same services for which it levies taxes.

█ The facts disclosed by the record would appear to sustain defendants' contention that they are being taxed beyond the limit prescribed by law.

If, by virtue of said assignment, plaintiff stands in the shoes of the Company or Committee as it contends, then it is required to discharge all of the obligations required of it by the Declaration regardless of the nature thereof, or any liability thereby entailed. The powers which plaintiff might be required to exercise in carrying out such an undertaking cannot be foreseen with reasonable certainty. As a result the power sought to be exercised, is so uncertain and indefinite that its extent cannot be defined.

█ It is the well established rule that the powers of municipal corporations to legislate are strictly construed and if there is any reasonable doubt as to the existence of a power, it must be resolved against the municipality claiming the right to exercise such a pow-

263

er. Lowenthal v. Chicago, 313 Ill. 190; Chicago v. Ross, 257 Ill. 76. Manifestly, there arises upon this record a serious doubt as to the authority of plaintiff to accept the assignment in question and accordingly there is presented a situation requiring application of the foregoing rule.

For the reasons indicated, the judgments of the Circuit Court of Tazewell County are reversed.

Reversed.

ROETH, P. J. and REYNOLDS, J., concur.