WES WARD ENTERPRISES, LTD., *et al.*, Plaintiffs-Appellants, Cross-Appellees, *v.* ALLEN ANDREWS, Superintendent of Police of the City of Peoria, *et al.*, Defendants-Appellees, Cross-Appellants.

Third District   No. 75-230

Opinion filed September 22, 1976.

460

Reno, O'Byrne & Kepley, of Champaign (J. Steven Beckett, of counsel), for appellants.

Jack B. Teplitz, Corporation Counsel, of Peoria (Brian N. Nemenoff, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The city of Peoria enacted an ordinance licensing and regulating massage establishments and persons who engage in the practice of massage. Two corporations who operate massage parlors and Cheryl Block, who is employed as a masseuse, brought an action to enjoin enforcement of the ordinance and to have it declared invalid and unconstitutional, naming as defendants the city superintendent of police and other officials with authority to enforce the ordinance. The Circuit Court of Peoria County upheld the validity of the ordinance in general, but ruled certain provisions void as unreasonable. Plaintiffs appeal from that judgment, and defendants cross-appeal from those portions of the judgment order invalidating particular provisions of the ordinance.

*Facts:*

Peoria, a home rule municipality, enacted a massage ordinance on September 10, 1974. The ordinance requires every massage establishment within the city to be licensed and to pay an annual fee of $100. Also, every person who gives massages for consideration is required to obtain a masseur or masseuse permit annually and to pay a $25 fee for an original application and $10 for a renewal application. The superintendent of police is the official authorized to issue, suspend and revoke licenses.

The ordinance requires licensees to be at least 18 years of age and to furnish specified personal data. Applicants seeking a masseur or masseuse permit are required to undergo an annual physical examination and to furnish a medical certificate relating to contagious diseases. Persons convicted of a felony or a sex-related offense cannot obtain a license, with an important exception which will be discussed in detail below. Licenses will be suspended or revoked for violations of the ordinance.

Before a license is issued to an establishment, the premises must be inspected by the department of inspection, fire department, board of health and city planning department. A license will be denied if the superintendent of police finds that the proposed operation would not comply with all applicable laws, including building, health, planning, housing, zoning, and fire codes of the city. Semi-annual inspections by the health department are also required. Another provision authorizes denial of a license to an applicant who refuses to appear for examination under oath regarding the application.

Minimum requirements for the physical facilities of a massage establishment are set out, particularly as to toilet and bathing facilities, storage of linens and towels, and sanitation. A certification by the city health officer that the premises sought to be licensed comply with these requirements must be furnished to the superintendent of police before a license will be issued.

The section governing operating requirements includes provisions relating to sanitation and specifies that all employees must "wear clean, non-transparent outer garments, covering the sexual and genital areas." Four subparagraphs of section 16—164 of the ordinance are of particular concern and must be quoted in full:

> "5. The sexual or genital area of patrons must be covered by towels, cloths or undergarments when in the presence of an employee, masseur or masseuse;
>
> 6. It shall be unlawful for any person, knowingly, in a massage establishment, to place his or her hand upon, to touch with any part of his or her body, to fondle in any manner, or to massage, a sexual or genital area of any other person;
>
> 7. No masseur or masseuse, employee or operator shall perform,

offer or agree to perform any act which would require the touching of the patron's genital area;

* * *

11. No masseur or masseuse shall administer a massage to a patron exhibiting any skin fungus, skin infection, skin inflammation, or skin eruption; unless a physician duly licensed by the State of Illinois certifies in writing that such persons may be safely massaged prescribing the conditions thereof."

The term "sexual or genital area" is defined as including "the genitals, pubic area, buttocks, anus, or perineum of any person, or the vulva or breasts of a female."

Other regulations govern advertising, "out call massage service," identification cards, and transfer and display of permits. Section 16—175 provides:

"This Ordinance shall not apply to hospitals, nursing homes, sanitaria or persons holding an unrevoked certificate to practice the healing arts under the laws of the State of Illinois, or persons working under the direction of any such persons nor in any such establishments nor shall this Ordinance apply to barbers or cosmetologists lawfully carrying out their particular profession or business and holding a valid, unrevoked license or certificate of registration issued by the State of Illinois."

The penalty for a violation is a fine not to exceed $500 or imprisonment not to exceed six months, or both.

Before suspension or revocation of licenses, the licensee is entitled to ten days written notice of the charges and a public hearing before the superintendent of police. An amendment to the ordinance provides for review by the city manager of any denial, suspension or revocation of a license.

At trial on the declaratory judgment action, plaintiffs presented testimony that their establishments offered various types of massages, including "locals" which involve massaging a patron's genitals, and that acts of sexual intercourse are not permitted on the premises.

The trial court held the ordinance to be constitutional and denied injunctive relief, noting that the city had voluntarily refrained from enforcing the ordinance while suit was pending. The court, however, ruled that five specific provisions were arbitrary and unreasonable.

On appeal from the judgment of the trial court, plaintiffs attack the ordinance on a broad front.

## A. POLICE POWER

Plaintiffs first argue that the entire ordinance is violative of due process as an unconstitutional infringement upon the fundamental right to work

guaranteed by the fourteenth amendment to the Constitution of the United States. Plaintiffs contend that the city has the burden of showing a "compelling governmental interest" because its ordinance restricts plaintiffs' fundamental right to engage in a lawful occupation, and they cite *Corey v. City of Dallas* (N.D. Tex. 1972), 352 F. Supp. 977, 981, where the court said:

> "Since this ordinance [regulating massage parlors] affects the fundamental right to work, the interest of the City of Dallas in enforcing this ordinance must be based on a compelling governmental interest.
>
> The court feels such an interest is lacking in this case because there are alternative methods which the City of Dallas may employ to achieve the objective of the ordinance."

■■ Plaintiffs' reliance is misplaced. *Corey* involved an ordinance provision making it unlawful for any person to administer a massage to a person of the opposite sex, and the question before the court was the constitutionality of the sexual classification which affected employment. The court decided that the "compelling state interest" standard was applicable to judge whether a sexual classification for employment purposes was proper under the equal protection clause. Because the Peoria ordinance does not prohibit giving massages to persons of the opposite sex, there is no constitutional question of a sexual classification.

In a case where a statute regulating visual care was challenged on similar due process grounds, the United States Supreme Court said that a statute regulating a business is constitutional if there is an evil at hand and if the particular law might be thought to be a rational way to correct it, and stated:

> "The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought. * * * 'For protection against abuses by legislatures the people must resort to the polls, not to the courts.' " *Williamson v. Lee Optical of Oklahoma* (1955), 348 U.S. 483, 488, 99 L. Ed. 563, 572, 75 S. Ct. 461, 464-65.

When examining an ordinance regulating an occupation, the Illinois Supreme Court in *People ex rel. Barrett v. Thillens* (1948), 400 Ill. 224, 232, 79 N.E.2d 609, 613, stated the guidelines as follows:

> "It is a fundamental and well-established rule, both in the United States courts and in the courts of this State, as a firmly settled constitutional principle, that every citizen is guaranteed the right to engage in any lawful, useful and harmless business or trade, and it

is not within the constitutional authority of the State legislature, in the exercise of police power, to interfere with the rights of the individual to carry on a legitimate business, *where no interest of the public safety, welfare or morals is damaged or threatened.*" (Emphasis added.)

The court also stated that, if an ordinance is claimed to be an exercise of the police power, "* * * the court must be able to see that it tends, in some degree, toward the prevention of offenses or the preservation of the public health, morals, safety or welfare." 400 Ill. 224, 235, 79 N.E.2d 609, 614.

The Peoria ordinance meets this test. Courts have repeatedly recognized that a city may regulate massage establishments in the exercise of its police power, and, in fact the *Corey* case, relied upon by plaintiffs, so held. See also 58 Am. Jur. 2d *Occupations, Trades, & Professions* §1 (1971); Annot., 17 A.L.R.2d 1183, § 5(1951).

Mr. Justice Brewer, many years ago, said in *L'Hote v. City of New Orleans* (1899), 177 U.S. 587, 596, 44 L. Ed. 899, 903, 20 S. Ct. 788. "[O]ne of the difficult social problems of the day is what shall be done in respect to those vocations which minister to and feed upon human weaknesses, appetities, and passions. The management of these vocations comes directly within the scope of what is known as the police power. They affect directly the public health and morals. Their management becomes a matter of growing importance, especially in our larger cities, where from the very density of population the things which minister to vice tend to increase and multiply."

■■ Thirty-five years ago, an Illinois court upheld the discretionary authority of the mayor of Chicago to grant and revoke massage parlor licenses. *(People ex rel. Anderson v. City of Chicago* (1st Dist. 1941), 312 Ill. App. 187, 37 N.E.2d 929 (abstract opinion).) We therefore hold that massage establishments and those who give massages may be licensed and regulated under the police power of the State of Illinois and its municipalities without contravening the due process rights of those who practice massage.

■■ Plaintiffs next contend that the Peoria ordinance is so overly broad as to be arbitrary and unreasonable. The ordinance, plaintiffs argue, would regulate all forms of human contact beyond a handshake and is not limited to commercial enterprises. This premise is faulty. The clear legislative intent is to license and regulate those engaged in the business of giving massages for a consideration. A friendly pat on the back by a cordial car salesman or the smoothing of wrinkles by a tailor would not be proscribed conduct, and neither would a rubdown given to a high school athlete by his coach or trainer. We believe the scope of the ordinance is

not so broad as to regulate persons other than those engaged in the business of selling massage services, and thus it does not exceed the area of public interest which the city seeks to protect.

Plaintiffs also assert that the ordinance as a whole imposes unreasonably burdensome standards for massage establishments. The test is whether the ordinance as a whole has a reasonable and substantial relation to the public purposes sought to be attained. *City of Chicago v. Vokes* (1963), 28 Ill. 2d 475, 193 N.E.2d 40; *City of Chicago v. Ben Alpert, Inc.* (1938), 368 Ill. 282, 13 N.E.2d 987.

One purpose of the Peoria ordinance is to protect the public health by preventing the spread of disease through unsanitary practices and facilities. Due to the close physical contact inherent in the massage business, reasonable standards of cleanliness, sanitation, and health can properly be imposed.

Another purpose of the Peoria ordinance is to prevent unlawful conduct. The Illinois Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 11—20(a)(4)) defines the offense of obscenity to include performance of an obscene act or an obscene exhibition of one's body for gain. In *People v. Taylor* (1st Dist. 1976), 35 Ill. App. 3d 418, 342 N.E.2d 96, the fondling of an adult male's genitals by a naked adult female in a private room of a place of business was held to be an obscene act within the purview of the obscenity statute. The provisions of the Peoria ordinance prohibiting nudity and touching of sexual and genital areas are obviously designed to proscribe such unlawful conduct, and to prevent unscrupulous persons from permitting massage establishments to be used for purposes of prostitution in violation of the Criminal Code. Similarly the requirement that licensees must not have been previously convicted of a felony or of a sex-related offense is reasonably related to this purpose.

We also find that the licensing fees required are not so unduly burdensome as to be confiscatory. The license fee which a municipality may impose must bear some reasonable relation to the burden and expenses incurred in issuing the license and enforcing the ordinance, but the burden of proof was upon plaintiffs to show that the fee will greatly exceed the cost of enforcement. Since no evidence relating to enforcement costs was introduced, plaintiffs have failed to meet their burden. *Village of Roxana v. Costanzo* (1968), 41 Ill. 2d 423, 243 N.E.2d 242.

■■ Accordingly, we hold the ordinance as a whole to be a reasonable means of carrying out the purposes sought to be accomplished.

## B. *CLASSIFICATION*

Plaintiffs attack the exemption of hospitals, nursing homes, persons licensed to practice the healing arts, and licensed barbers and

cosmetologists as a violation of the equal protection clause of the fourteenth amendment of the United States Constitution, arguing that there is no reasonable distinction between the included classes and those excluded. Plaintiffs rely particularly upon *Cheek v. City of Charlotte* (1968), 273 N.C. 293, 160 S.E.2d 18, where the North Carolina Supreme Court invalidated a massage parlor ordinance because there was no reasonable ground for exempting barber shops, beauty parlors, and Y.M.C.A. and Y.W.C.A. health clubs from an ordinance which covered massage parlors, health salons, and physical culture studios.

The rules for testing a classification alleged to be discriminatory were summarized in *Morey v. Doud* (1957), 354 U.S. 457, 463-64, 1 L. Ed. 2d 1485, 1490-91, 77 S. Ct. 1344, 1349, as follows:

> " '* * * The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefor is purely arbitrary. * * * One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' * * * 'Discriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision.' "

The classification contained in the Peoria ordinance excludes from applicability other occupations and businesses which may involve massage and which are already licensed and regulated by the State. Unlike the North Carolina case, Peoria has not attempted to classify occupations on any other ground. The classification contained in the ordinance has a reasonable basis, does not arbitrarily discriminate between persons in substantially the same situation, and is not of an "unusual character." We thus find that the classification contained in the Peoria ordinance does not violate the equal protection guarantees of the fourteenth amendment.

## C. HOME RULE

Plaintiffs also challenge the validity of the ordinance on the ground that the home rule powers of the city of Peoria, granted by the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §6), violate the one man, one vote requirement of the equal protection clause, as pronounced in *Baker v. Carr* (1962), 369 U.S. 186, 7 L. Ed. 2d 663, 82 S. Ct. 691. According to this argument, the grant of home rule powers to cities over 25,000 population, while requiring cities of lesser size to acquire such powers only by local referendum, discriminates against small

municipalities. This same issue was resolved adversely to plaintiffs' position by the Illinois Supreme Court in *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 556-57, 338 N.E.2d 6, 14, where it was held that home rule "* * * neither impermissibly affects the right to vote of any citizen of this State nor creates a classification that offends the traditional requirements of Federal or State equal protection."

Furthermore, the massage ordinance was enacted under the city's general police powers common to all municipalities and not under Peoria's special home rule powers.

## D. *PREEMPTION*

■■ Plaintiffs also contend that the State has preempted the area regulated by the Peoria ordinance by either the Illinois Physical Therapy Registration Act (Ill. Rev. Stat. 1973, ch. 91, par. 22.1 *et seq.*), or by the sex offenses provisions of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, art. 11). Plaintiff assumes that amendments to those statutes passed by a three-fifths vote of the General Assembly after 1970 amounted to a preemption of home rule powers under the Illinois Constitution (Ill. Const. 1970, art. VII, §6(h)), which provides:

> "The General Assembly may *provide specifically* by law for the exclusive exercise by the State of any power or function of a home rule unit * * *." (Emphasis added.)

The Criminal Code does not specifically provide for the exclusive exercise of State power and thus does not constitute State preemption of this field. See *Illinois Liquor Control Com. v. City of Joliet* (3d Dist. 1975), 26 Ill. App. 3d 27, 32, 324 N.E.2d 453, 455; *cf. Rozner v. Korshak* (1973), 55 Ill. 2d 430, 435, 303 N.E.2d 389, 392.

However, the physical therapy statute does specifically provide for exclusive State exercise of the power to license persons who practice physical therapy. (Ill. Rev. Stat. 1975, ch. 91, par. 22.30.) A 1975 amendment to that Act restricts the definition of physical therapy to "evaluation or treatment * * * for the purposes of preventing, correcting, or alleviating a physical or mental disability." (Ill. Rev. Stat. 1975, ch. 91, par. 22.1.) We are required to apply the present law in deciding this case. (*Rios v. Jones* (1976), 63 Ill. 2d 488, 348 N.E.2d 825.) Thus the State regulation does not now cover massages given for purposes other than treatment of a physical or mental disability, and the Illinois Physical Therapy Registration Act does not preempt the area covered by the Peoria ordinance. We note that plaintiffs do not claim to be subject to the physical therapy statute. Also the Peoria ordinance expressly exempts persons holding a valid State certificate to practice the healing arts and thus does not attempt to intrude on the State licensing power.

## E. *MASTURBATORY MASSAGE PROHIBITION*

Plaintiffs assert that the provisions prohibiting exposure and touching of genital and sexual areas (section 16—164(5)-(7), quoted in full above) are so vague and overbroad as to violate due process requirements of the fourteenth amendment. In support of the vagueness attack, plaintiffs cite *Grayned v. City of Rockford* (1972), 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 227-28, 92 S. Ct. 2294, 2298-99, where it was said that laws must give a person of ordinary intelligence fair warning of what conduct is prohibited, for vague laws may trap the innocent.

■■ We believe the language of the Peoria ordinance explicitly defines the prohibited conduct and provides "fair warning" of what acts will amount to a violation. If these provisions are to be criticized, it is not for reason of vagueness.

When examining particular regulatory provisions of a municipal ordinance enacted under the police power, we are guided by the general principles set out in *Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 515-16, 198 N.E.2d 326, 332, *cert. denied*, 379 U.S. 964, 13 L. Ed. 158, 85 S. Ct. 655, as follows:

> "A presumption of validity attaches to municipal enactments and regulations adopted under the police power and the burden of proving to the contrary is upon him who asserts the invalidity. * * * And while, as we have noted, such legislative action is generally subject to judicial review to determine whether it is related to and reasonably necessary and suitable for the protection of the public health, safety, welfare or morals, *courts will not disturb a police regulation where there is room for a difference of opinion*, but in such case the legislative judgment will prevail. * * * Furthermore, the wisdom, necessity and expediency of police regulations are no concern of the courts, but are matters primarily for the legislative body of the municipality, and courts are without power to interfere merely because they believe a different regulation might have been wiser or better." (Emphasis added.)

The three subsections relating to masturbatory massages challenged by plaintiffs are designed to prevent criminal conduct, particularly the offenses of obscenity, prostitution and possibly public indecency. The requirements that both patron and employee preserve a minimum degree of modesty and avoid genital contact seem admirably suited to that end. Given the weakness of human nature, to permit that which is prohibited here would invite criminal misconduct.

The prohibition of masturbatory massages also serves to prevent massage establishments from offending "An Act regarding * * * public nuisances * * *" (Ill. Rev. Stat. 1975, ch. 100½, par. 1), which provides that places used for purposes of " * * * lewdness, assignation, or

prostitution are hereby declared to be public nuisances, and may be abated * * *." In *City of Chicago v. Geraci* (1st Dist. 1975), 30 Ill. App. 3d 699, 332 N.E.2d 487, 492, the court, in upholding an injunction against the operation of a "bath house," held that, based on both the common law and on statute, masturbatory massage parlors are public nuisances and may be enjoined. Accord, *Village of Bensenville v. Botu, Inc.* (2d Dist. 1976), 39 Ill. App. 3d 634, 350 N.E.2d 239.

■■ Plaintiffs further complain that subsections (5) and (7) do not require criminal intent, so that an accidental slip of the towel, or of the hand, could be a violation of the ordinance. We agree with defendant that intent will be implied where not expressly included in a criminal enactment, and that the accidental nature of the act would be an appropriate defense to any violation charged. See Ill. Rev. Stat. 1975, ch. 38, art. 4.

Plaintiffs finally argue that conduct violating subsections (5), (6), and (7) will be criminal only in Peoria and nowhere else, in contravention of due process, with particular reference to homosexual sex acts between consenting adults, which are no longer a separate crime under the Criminal Code.

■■ First, we believe no conflict exists between the Illinois Criminal Code and the Peoria Massage Ordinance concerning homosexual acts. The crime of obscenity, as interpreted in *People v. Taylor* (1st Dist. 1976), 35 Ill. App. 3d 418, 342 N.E.2d 96, is not necessarily restricted to persons of the opposite sex and could encompass obscene acts of a homosexual nature as well. Also, the crime of prostitution (Ill. Rev. Stat. 1975, ch. 38, par. 11—14) is not confined to male-female transactions. Thus the Peoria ordinance, like the Criminal Code, makes no distinctions based on sex.

Second, this argument is another approach to the preemption issue discussed previously. In addition, any regulatory ordinance enacted under the police power and providing penalties for violations will, as a matter of course, proscribe conduct that is permitted elsewhere in the State. See *e.g., Illinois Liquor Control Com. v. City of Joliet* (3d Dist. 1975), 26 Ill. App. 3d 27, 35, 324 N.E.2d 453, 458.

Hence, we find that subsections (5), (6), and (7) of section 16—164 are constitutional.

## F. CROSS-APPEAL

The city on cross-appeal urges us to consider the constitutionality of the five provisions of the ordinance ruled invalid by the trial court, and argues that these are all matters to be left to the legislative judgment of the city council.

■■ First, the trial court deleted "buttocks" from the definition of "sexual and genital area," as being beyond the scope of legitimate

government concern. Plaintiffs insist that inclusion of buttocks provides an overly-broad restriction upon massage operations. However, we see no reason why the Peoria City Council may not choose to prohibit the exposure and touching of buttocks as a practical and reasonable means of carrying out the purposes of the ordinance. After giving careful consideration to the anatomical location of buttocks, in close proximity to the other proscribed areas, we conclude that section 16—153(i) of the ordinance is valid, and we reverse the ruling of the trial court.

■■ Second, the requirement that a license can be denied if the applicant fails to appear for an examination under oath as to his application was held unconstitutional because it permits an intrusion into privacy and is unduly burdensome. We are inclined to agree that these requirements could be burdensome in some instances. However, there would be nothing inherently unfair in requiring a sworn affidavit as to the facts recited in the application, or in requiring a personal interview with the licensing authority. Similarly, we see nothing impermissible in permitting the superintendent of police to require an applicant to appear "at any reasonable time and place for examination under oath" regarding the application. Also, the requirement that the applicant reveal any criminal record, past license revocations, and other matters is reasonably related to the purposes of the ordinance. Prior ordinance violations were held to be proper grounds for denying a trailer park license in *Rezler v. Village of Riverside* (1963), 28 Ill. 2d 142, 151, 190 N.E.2d 706, and, in a more innocent age, the reviewing court in *People ex rel. Anderson v. City of Chicago*, (1st Dist. 1941), 312 Ill. App. 187, 37 N.E.2d 929 (abstract opinion), approved the refusal to renew a massage parlor license because it was common practice of the licensee to have female attendants massage male patrons. From these cases, we conclude that past conduct is a proper consideration in determining when a license should be granted. We reverse the ruling of the trial court and hold this requirement set out in section 16—155 to be valid.

Third, the trial court deleted the requirement that the premises must comply with building, planning, housing, zoning and fire codes as prerequisites to issuance of a license, holding that this provision placed too much arbitrary power in the licensing authority without providing definable standards. A nearly identical regulatory provision was approved in *City of Chicago v. Ben Alpert, Inc.* (1938), 368 Ill. 282, 287-88, 13 N.E.2d 987. We hold section 16—157, subparagraph 1 to be valid.

■■ Fourth, the trial court ruled void two provisions which give the superintendent of police discretionary authority to determine whether an applicant with prior convictions for felonies or sex-related offenses, but none within the past four years, has shown evidence of "rehabilitation

sufficient to warrant the public trust." We equate this language with those ordinances which require an applicant to show "good moral character" and which leave to the licensing authority the task of deciding whether an applicant meets this qualification. (*Village of East Alton v. Arst* (1944), 386 Ill. 224, 227, 53 N.E.2d 929; *People ex rel. Zaransky v. City of Chicago* (1st Dist. 1938), 293 Ill. App. 301, 12 N.E.2d 239.) Vesting such discretion in the superintendent of police is not unreasonable. Therefore, we hold that sections 16—157 and 16—161 are valid.

■■ Fifth and finally, the trial court held the prohibition of massage of persons with a fungus, infection, inflammation or eruption of the skin to be too broad because it would apply to persons with athlete's foot or face pimples. The purpose of this section is to prevent the spread of contagious skin conditions and to avoid injury to patrons suffering from skin problems. Since masseurs and masseuses may not be qualified to distinguish between minor and serious skin problems, we cannot say that this section has no reasonable basis. Although the public health might be adequately protected with a different regulation, this provision is not arbitrary or unreasonable. We thus find section 16—164(11) to be valid.

In summary, we affirm the order of the trial court declaring the Peoria massage ordinance to be valid and constitutional and denying plaintiff's prayer for an injunction against enforcement of the ordinance. Also, we reverse those portions of the order invalidating parts of sections 16—153(1), 16—155, 16—157, 16—161, and 16—164(11).

Affirmed in part; reversed in part.

STOUDER, P. J., and BARRY, J., concur.