Chin HILBERS (aka Susie Hilbers) dba Aloha Massage and New Toyko Massage, Jan Augenstein Meyer dba Touch 'N' Glow Massage and Gold Dust Modeling Studio, Tae Yon Greening dba Anna's Massage, Penny Hazen dba The Body Shop, Il Kum Belt dba U & I Massage, Chong Suk Woodward dba Glass Slipper, Juanita Cration dba K's Massage, Yi Ki Sum dba Shanghai Massage, Cornell Walker dba Fantasia Massage, Dwight Sherwood dba Ruby's Massage, Chung Suk Yu dba Daisy Mae's, Chu Pyong dba Tokyo Ginza, Thelma Evelyn Evan, an Individual, Kim Roserau, an Individual, Paula Slessen, an Individual, Joe Starky, and Individual, La Chateau, a corporation, and Golden Gate Maxi, a corporation, Appellants,

v.

MUNICIPALITY OF ANCHORAGE, a Municipal Corporation, Mary Coffey, City Clerk for the Municipality of Anchorage, Charles G. Anderson, Chief of Police for the Anchorage Police Department, Appellees.

No. 4296.

Supreme Court of Alaska.

May 9, 1980.

33

Edgar Paul Boyko, Edgar Paul Boyko & Associates, Anchorage, for appellants.

Allan E. Tesche, Deputy Municipal Atty. and Theodore C. Berns, Municipal Atty., Anchorage, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE, and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

RABINOWITZ, Chief Justice.

This is an appeal from the superior court's judgment upholding the constitutionality of certain ordinances regulating and licensing massage parlors and physical culture studios in the Municipality of Anchorage.[1]

AMC 10.40.010 requires that all operators and employees of physical culture studios and massage parlors must be licensed. Requirements for obtaining a license are that the applicant be at least eighteen years of age, not be addicted to drugs, have no felony convictions for two years prior to application or employment, and have no convictions of any sexual or violent crimes within two years of application or employment.[2] AMC 10.40.015 prohibits the operation of a massage parlor or physical culture studio between 2 a.m. and 6 a.m., the locking of patrons inside any part of the building, solicitation for prostitution, cunnilingus, or fellatio, and the intentional exposure of an

1. These ordinances were enacted on August 18, 1977, and later amended on January 24, 1978.

2. AMC 10.40.010 provides:

 *Physical culture studios—Licenses.*
 A. No person may engage in the business of operating a physical culture studio or massage parlor without first obtaining a physical culture studio license from the municipal clerk. The clerk must be notified of any change in license location.
 B. No person may engage in the business of providing massages or related services without first obtaining a masseur/masseuse license from the clerk.
 C. A person having a valid masseur/masseuse license may work only in a premises operated by a person licensed under subsection A of this section. A person having a valid masseur/masseuse license must notify the clerk of any change in work location.
 D. As used in this section:
 1. 'engage in the business of operating a physical culture studio or massage parlor' means operating a business establishment or premises . . . other than one used for the regular practice of a profession or vocation licensed or regulated under Alaska Statutes Title 8, whose primary activity consists of providing any of the following services for hire or compensation:
 a. bath or bathing facilities;
 b. steamrooms, saunas or related facilities;
 c. modeling or modeling facilities;
 d. services involving the use of sunlamps, heatlamps, conditioning or exercise equipment;
 e. massage or related services.
 2. 'engaging in the business of providing massages or related services' means administering . . . for compensation or hire a method of treating the superficial parts of the human body through physical contact with or without the aid of an artificial device or instrument by rubbing, stroking, kneading, tapping, rolling, pounding, or vibration for the purposes of relaxation, amusement, hygiene, or improvement of physical appearance, muscle tone, or circulation. This sub-section shall not apply to any treatment, cure, or therapy given by a person licensed or regulated under Title 8 of the Alaska Statutes.
 E. An applicant for a license under subsection A or B shall possess the following qualifications:
 1. be at least 18 years of age;
 2. not be addicted to intoxicants, dangerous drugs or narcotics;
 3. not have been convicted of a felony for two years prior to the date of application;
 4. not have been convicted within two years prior to the date of application or employment of a crime of pimping, pandering, prostitution, assignation, solicitation, lewd or lascivious acts with a child, larceny, robbery, assault with a dangerous weapon or other similar crimes involving serious physical violence to another or sexual misconduct.
 F. An applicant for a license under subsections A or B above shall furnish with the application three passport-size photos depicting the head and shoulders of the applicant; a description of applicant's sex, height, weight, color of eyes and hair; a complete set of fingerprints; and a complete description of all misdemeanor and felony convictions (except for nonmoving vehicle violations) for two years prior to the date of application.
 G. Licensees must keep records of treatments given and the names of masseurs or masseuses giving such treatments. Such records, as well as the premises of the business establishment, shall be subject to administrative inspection by municipal officers as permitted under this title.
 H. Licensees shall keep licensed premises clean and sanitary. Clean towels, sheets and linen shall be provided for each patron receiving massage services. Disinfecting agents and sterilizing equipment sufficient to assure the cleanliness and safe condition of all equipment shall be provided and used.

employee's genitals or the touching of those of a patron.[3]

Appellants are owners, employees, and patrons of Anchorage massage studios. They initially filed a complaint for injunctive and declaratory relief seeking to enjoin enforcement of these massage parlor ordinances. Appellants then applied for a temporary restraining order, which was denied. Appellants next moved for a preliminary injunction against enforcement of the ordinances, which was denied except for an injunction against enforcement of a warrantless emergency search provision. The parties then stipulated that several constitutional issues be tried, and that the trial be by the superior court on the basis of the memoranda and affidavits submitted.[4] Judgment was subsequently entered in favor of the defendant Municipality of Anchorage together with an award of attorney's fees and costs in the total amount of $10,215.75. This appeal followed.

We first note that ordinances regulating massage parlors and physical culture studios are within the statutory powers of the Municipality of Anchorage.[5] Other jurisdictions have specifically held that local governments may regulate and license massage parlors.[6] There is also a presumption of constitutionality in any challenge to a municipal ordinance. *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447 (Alaska 1979).[7]

Appellants first contend that AMC 10.40.-010(E)(4), which precludes anyone convicted of specified offenses from operating or working in a massage parlor for two years after conviction violates their right to due process by creating an irrebuttable presumption that they are unqualified.

As stipulated in the superior court, this issue is "[w]hether AMC 10.40.010(E)(4) violated due process of law by conclusively presuming that certain persons convicted of prostitution related misdemeanors are unfit to obtain licenses as masseuses or operators

3. AMC 10.40.015:
 *Physical culture studios—Prohibited acts.*
 A person holding a physical culture studio license or a masseur/masseuse license may not:
 A. Operate the business or engage in the licensed activity between the hours of 2:00 a. m. and 6:00 a. m.;
 B. Lock patrons inside any part of the premises during business hours;
 C. Solicit for another person, engage in, or offer to engage in an act of prostitution, cunnilingus or fellatio with a business invitee.
 D. Intentionally expose their genitals to a business invitee or intentionally touch the genitals of a business invitee.

4. The parties stipulated to trial of these issues:
 1. Whether AMC 10.40.010(E)(4) violated due process of law by conclusively presuming that certain persons convicted of prostitution related misdemeanors are unfit to obtain licenses as masseuses or operators of massage parlors.
 2. Whether AMC 10.40.015(A), governing the closing hours of massage parlors, violates equal protection of the laws.
 3. Whether AMC 10.40.015(B), which prohibits persons holding massage licenses from locking patrons inside any part of the premises during business hours, violates constitutionally protected rights to privacy.

4. Whether AMC 10.40.015(D), which prohibits intentional exposure of the genitals of persons holding massage licenses to business invitees, violates constitutionally protected rights of privacy, and equal protection.

5. AS 29.48.035(a), *Regulatory powers*, states in pertinent part:
 A municipality may regulate the operation and use of its public rights-of-way, public facilities and services. It may also regulate the following:
 . . . . .
 (19) other powers and functions affecting the general health, safety, well-being and welfare of its inhabitants.

6. *See Wes Ward Enterprises, Ltd. v. Andrews*, 42 Ill.App.3d 458, 355 N.E.2d 131 (1976); *City of Spokane v. Bostrom*, 12 Wash.App. 116, 528 P.2d 500 (1974); *Brown v. Brannon*, 399 F.Supp. 133 (M.D.N.C.1975), *aff'd*, 535 F.2d 1249 (4th Cir. 1976); *Clevenger v. City of East Moline*, 44 Ill.App.3d 168, 2 Ill.Dec. 552, 357 N.E.2d 719 (1976).

7. More particularly in *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1979) (footnote omitted) we said:
 A court's inquiry into arbitrariness begins with the presumption that the action of the legislature is [valid].

of massage parlors." [8] AMC 10.40.010(E)(4) provides in relevant part that an applicant for a license shall:

not have been convicted within two years prior to the date of application or employment of a crime of pimping, pandering, prostitution, assignation, solicitation, . . . or other similar crimes involving . . . sexual misconduct.[9]

█ In evaluating the due process claims asserted in this appeal, we first conclude that due process protections extend to the interests involved. In *Herscher v. State, Dep't of Commerce*, 568 P.2d 996, 1002 (Alaska 1977), we stated that the protection of due process extends to revocation of a business license:

We find that Herscher's proprietary interest in the hunting guide license is of sufficient importance to warrant protection under constitutional requirements relating to due process of law. In *Frontier Saloon, Inc. v. Alcoholic Beverage Control Board*, 524 P.2d 657, 659–660 (Alaska 1974), we held:

It has long been recognized that an interest in a lawful business is a species of property entitled to the protection of due process. . . . Neither may this interest be dismissed as *de minimis*. A license to engage in a business enterprise is of considerable value to one who holds it. (footnote and citations omitted)

█ Due process protection may also be invoked as to the issuance of a business license, which is what is at stake here. Appellant Stafford, who was convicted of solicitation for prostitution, alleges that as a result of this ordinance, she could not obtain a masseuse license or operator license for a massage parlor. Thus, the appropriate criteria for further due process analysis

is that which is set forth in *Matthews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18, 33 (1976), quoted in *City of Homer v. State, Dep't of Natural Resources*, 566 P.2d 1314, 1319 (Alaska 1977):

"[O]ur prior decisions indicate that identification of the specific dictates of due process generally involve consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail. (citations omitted)." [10]

This is the mode of analysis advanced by the municipality. Appellants urge instead that the appropriate analysis is the "irrebuttable presumption" doctrine. Succinctly stated, that doctrine is:

When a statutory provision imposes a burden upon a class of individuals for a particular purpose and certain individuals within the burdened class are so situated that burdening them does not further that purpose, the rigid statutory classification must be replaced, to the extent administratively feasible, by an individual factual determination that more accurately selects the individuals who are to bear the statutory burden.[11]

The principle, though difficult to state, is more easily grasped by example. In *Turner v. Department of Employment*, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975), the Court held that a Utah statute making pregnant women ineligible for unemployment benefits for a period extending from

---

8. Appellants argue in their brief the unconstitutionality of AMC 10.14.010(E)(3) and (4) as to the larger number of criminal convictions found as a bar to licensing in these sections of the ordinance. *See* note 2 *supra*. However, these issues were not before the superior court, *see* note 4 *supra*, and we need not consider them.

9. For the full text of the ordinance, *see* note 2 *supra*.

10. *See* Note, *The Conclusive Presumption Doctrine: Equal Process or Due Protection?*, 72 Mich.L.Rev. 800 (1974).

11. *Id.*

12 weeks before the expected date of childbirth to 6 weeks after childbirth created a conclusive presumption that such women were unable to work because of pregnancy and childbirth and "[i]t cannot be doubted that a substantial number of women are fully capable of working well into their last trimester of pregnancy and of resuming employment shortly after childbirth." 423 U.S. at 46, 96 S.Ct. at 250–51, 46 L.Ed.2d at 184. The court concluded: "The Fourteenth Amendment requires that unemployment compensation boards no less than school boards must achieve legitimate state ends through more individualized means when basic human liberties are at stake." Id.

While this doctrine has been employed by the United States Supreme Court in several cases, its continued vitality is in question.[12] Commentators have concluded that the doctrine was developed in large part to avoid the rigidity of two-tiered equal protection analysis and that its doctrinal concerns can be fully addressed by a more flexible equal protection analysis,[13] such as that adopted by this court in Isakson v. Rickey, 550 P.2d 359 (Alaska 1976). In our view a careful balancing and weighing of the three factors from Matthews v. Eldridge, enumerated above, provides a better mode of analysis than the "irrebuttable presumption" doctrine. With the irrebuttable presumption doctrine, one looks to whether the presumptive category includes members who should not be included, i. e. what error there is in the category including those who should not be included and whether, because of the error, the category should be abandoned in favor of individual treatment. The doctrine's continued viability seems to be based as noted in Turner on whether the interests involved are "basic human liberties." The same type of considerations occur under the due process analysis of Matthews v. Eldridge: the risk of error of the present procedure is weighed against administrative feasibility of alternatives. All this, as Eldridge states, is considered in light of the interests of the individual involved.

As to the interest involved, as in all business licensing cases, the individual has an interest in pursuing a chosen career and making a livelihood. The government's interests in these licensing provisions for massage parlors and physical health studios were several. A review of the minutes of the meeting of the Anchorage Municipal Assembly shows that behind the passage of these ordinances was an expressed concern for control of prostitution, noise, and traffic congestion. Such regulation, as already noted, is a valid exercise of the city's police power.[14] As for the particular aspects of

12. The doctrine has been discussed in numerous cases. See, e. g., Turner v. Department of Employment, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975); Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); United States Dep't of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). In Weinberger, Justice Rehnquist authored the majority opinion, which suggested that all the previous conclusive presumption cases were decided on other grounds. However, in Turner the doctrine sprang back to life though seemingly limited to various vital personal rights. Its current status is unclear.

13. See Ackerman, The Conclusive Presumption Shuffle, 125 U.Pa.L.Rev. 761 (1977); Tribe, The Supreme Court 1972 Term—and Law, 87 Harv. L.Rev. 1, 8 n.41, 49, n.224 (1973); Note, The Irrebuttable Presumption Doctrine in the Supreme Court, 87 Harv.L.Rev. 1534 (1974); Note, The Conclusive Presumption Doctrine: Equal Process or Due Protection? 72 Mich.L. Rev. 800 (1974); Comment, Constitutional Law: Court Substitutes Conclusive Presumption Approach for Equal Protection Analysis, 58 Minn.L.Rev. 965 (1974); Note, Irrebuttable Presumptions: An Illusory Analysis, 27 Stan.L. Rev. 449 (1975). The commentators note that any legislative classification creates a conclusive presumption of some sort with respect to excluded classes and concludes that equal protection analysis should more properly be employed to review such classifications.

14. AS 29.48.035(a), Regulatory powers. See also Wes Ward Enterprises, Ltd. v. Andrews, 42 Ill.App.3d 458, 355 N.E.2d 131 (Ill.App. 1976); City of Spokane v. Bostrom, 12 Wash. App. 116, 528 P.2d 500 (1974).

the ordinance under scrutiny here, the control of prostitution is the primary goal. The city submitted evidence to the superior court that prostitution was an offense likely to be committed repeatedly.[15] Appellants did not submit any evidence rebutting the city's evidence.[16] The structuring of an ordinance that disallows those convicted of a prostitution related offense from applying for a license is a rational means to control prostitution. It operates by keeping those who have been recently convicted of a prostitution related offense [17] and thus might be thought to have a propensity to repeat the offense from being licensed in a profession to which ready opportunity to commit prostitution exists.[18]

Admittedly the automatic disqualification may sweep broader than necessary. A person who has been convicted of a prostitution related offense within two years of application for a license may not be likely to contribute to prostitution related activi-ties. However, the risk of error is difficult to determine. Especially given the two year limit on disqualification, we think the risk of erroneous determination insubstantial.

The alternative to the irrebuttable presumption in AMC 10.40.010(E)(3) is to offer individual hearings where the applicants could demonstrate their rehabilitation despite a recent conviction. However, appellants made no showing how individual applicants would be able to present proof that despite their conviction they would not commit further prostitution related offenses. The question of determining the likelihood of an individual applicant, with a recent prostitution related conviction, committing further such offenses is indeed difficult. For such circumstances, we think the value of individual hearings highly questionable.

■■ Further we note that there is a significant administrative burden which

---

**15.** See affidavit of Tim Kasper, paragraph 4:

Based on my experience in investigating vice crimes in Anchorage massage parlors, I believe that the provisions of AMC 10.40.-010(E)(4) which prevent persons convicted of prostitution-related offenses within two years from obtaining a license will reduce or at least control the incidence of offenses in massage parlors. Prostitution is an offense almost always committed repeatedly. For many persons, prostitution is a way of life, which acts are committed out of necessity for readily available cash with comparatively low risk of physical harm or serious legal consequences. Based on my experience in enforcing prostitution laws in Anchorage, and my contacts with women involved in prostitution here, such women have a relatively high incidence of drug addiction and must continue prostitution in order to support their addiction. I have observed many women arrested and convicted of prostitution offenses frequently return to the same places where they were arrested, and within a relatively short period of time resume their activities which lead to their arrest. Prior prostitution convictions, therefore, especially recent ones, are reliable indicators that a person recently convicted of that crime will repeat that offense. I believe that the two year provision of the massage parlor ordinance will control, if not reduce prostitution in Anchorage massage parlors by denying persons who have a relatively strong tendency to repeat a prostitution offense the oppor-tunity to obtain a license for at least two years.

**16.** Cf. Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), where there was expert testimony that whether or not a pregnant woman was able to continue teaching was an individual matter, and determinable by her personal physician.

The affidavit of Annette Stafford stated that she pled nolo contendere to a charge of soliciting, because she had no money and thought she would get a suspended sentence. She denies being guilty of the charge, or being an habitual prostitute.

**17.** Again, we need not consider whether the end sought, control of prostitution, is advanced by automatic disqualification for recent convictions for other felonies and violent crimes as provided in AMC 10.14.010(E)(3) and (4). See note 8 supra.

**18.** Cf. Perrine v. Municipal Court, 5 Cal.3d 656, 97 Cal.Rptr. 320, 488 P.2d 648 (1971). In Perrine, an ordinance prohibiting operation of a bookstore to persons convicted of sexual or violent crime was held to have no reasonable relation to the qualifications to operate a bookstore. In the case at bar, given the conducive atmosphere of massage parlors to prostitution, there is a reasonable connection between conviction for the offenses and qualification to be a masseuse/masseur, or physical culture studio operator.

would result from granting each applicant for a license an individual hearing. The municipal clerk for Anchorage stated that based on her experience, the municipality would be required to hold an additional thirty hearings per year on the issuance of licenses under the ordinance. She stated that each hearing would last three to eight hours, and require four to five hours of preparation time by each municipal employee involved, exclusive of appeals of any ruling. We are cognizant of the fact that administrative convenience alone is not a basis for denying due process. However, when coupled with the appellants' failure to show a likelihood of demonstrating at individual hearings that those convicted of the offenses in question are rehabilitated, and the governmental interest in controlling vice crimes, we conclude that the ordinance's automatic two-year disqualification from the date of "application" for a license does not violate appellants' right to due process protection.

■ We come to the opposite conclusion as to the part of AMC 10.40.010(E)(4) which grants a two year disqualification from the date of "employment" rather than application for a license. As appellants note,

> if an applicant was convicted in 1965 of one of the listed or enumerated crimes, commenced employment in 1966, and continued in that job until the present time, the applicant would be precluded from obtaining a license since the conviction was within two years of their employment.

This provision as worded raises serious questions of due process violations because of its potential for calling for the refusal to license someone who has led a conviction-free life for many years. We think the likelihood that the category chosen for an irrebuttable presumption includes those who would not be involved in the future in

prostitution is increased substantially. For the passage of a substantial period of time without conviction greatly increases the probability of proving rehabilitation at a hearing and also increases the need for individualized treatment. Thus, as to this provision, the possibility of an erroneous determination and the validity of meaningful individual hearings outweigh any administrative costs to the city. We are therefore of the view that the requirement that an applicant for a license have a record, for two years prior to the date "of employment," free of the sexually related criminal convictions listed in AMC 10.40.010(E)(4), is invalid as an unconstitutional deprivation of the due process rights of an applicant so situated.

■ Appellants next contend that the provisions in AMC 10.40.015(A) and (D) violate their rights to equal protection. AMC 10.40.015(A) and (D) provide:

> A person holding a physical culture studio license or a masseur/masseuse license may not:
>
> A. Operate the business or engage in the licensed activity between the hours of 2:00 a. m. and 6:00 a. m.
>
> . . . . .
>
> D. Intentionally expose their genitals to a business invitee or intentionally touch the genitals of a business invitee.[19]

The federal equal protection test utilizes a two-tier analysis: if the statute affects a fundamental right, the state must show a compelling interest for the classification;[20] if a non-fundamental right is affected, then the statute will stand if not drawn on the basis of criteria wholly unrelated to the objective of the statute.[21] The scrutiny a statute receives under federal equal protection therefore depends on characterization of the affected rights as fundamental or non-fundamental. Under Alaska's constitu-

---

**19.** Appellants also argue in their brief that AMC 10.40.015(D) is overbroad and in violation of the first amendment. However, both parties stipulated to the constitutional issues to be tried to the court, and the first amendment issue was not included. *See* note 4 *supra.* Therefore, we decline to consider the issue.

**20.** *Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502, 511 (1971).

**21.** *Allied Stores of Ohio v. Bowers* 358 U.S. 522, 530, 79 S.Ct. 437, 442, 3 L.Ed.2d 480, 486 (1959).

tional equal protection provisions, we have adopted a stricter "rational basis" equal protection test for those statutes not affecting fundamental rights:

> Under the rational basis test, in order for a classification to survive judicial scrutiny, the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

It is this more flexible and more demanding standard which will be applied in future cases if the compelling state interest test is found inappropriate. As a result, we will no longer hypothesize facts which would sustain otherwise questionable legislation as was the case under the traditional rational basis standard. Thus, under the new test

> Judicial deference to a broad range of conceivable legislative purposes and to imaginable facts that might justify classifications is strikingly diminished. Judicial tolerance of overinclusive and underinclusive classifications is notably reduced. Legislative leeway for unexplained pragmatic experimentation is substantially narrowed.

*Isakson v. Rickey*, 550 P.2d 359, 362 (Alaska 1976) (footnotes omitted).

■ A federal court has held, in the context of consideration of a massage parlor ordinance, that there is no "fundamental right" to pursue a chosen vocation. *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978).[22] Although we have held that there is a strong interest in an individual's right to pursue his or her chosen occupation,[23] we have not held that interest in employment is a fundamental right entitled to "compelling interest" scrutiny. Thus, the applicable standard of scrutiny we will apply is our Alaska standard determining if a "rational basis" exists, and whether the legislative classification bears a "fair and substantial" relation to the object of the statute.

■ Appellants contend that AMC 10.-40.015(A), which requires closure from 2 a. m. to 6 a. m., violates their right to equal protection because other all-night businesses in the proximity are allowed to remain open all night. The two purposes of AMC 10.40.015 as already noted are the reduction of adverse environmental effects and control of prostitution.

There was conflicting evidence presented on whether there are other businesses in the vicinity of plaintiffs' massage parlors which are open for twenty-four hours and what effects those businesses have on the local residential community.[24] The massage parlors were generally found in more residential areas and presented distinct problems through flashing neon signs, increased noise and traffic. The trial court concluded that there was a reasonable basis for distinguishing between massage parlors and other businesses.[25]

22. *But see Cianciolo v. Members of City Council, Knoxville, Tenn.*, 376 F.Supp. 719 (E.D. Tenn.1974).

23. *Herscher v. State, Dep't of Commerce*, 568 P.2d 996 (Alaska 1977); *Nichols v. Eckert*, 504 P.2d 1359 (Alaska 1973).

24. In an affidavit, May Rodins stated that she was personally familiar with the location of plaintiffs' physical culture or massage studios, and that all of them were adjacent to bars, liquor stores, motels, or convenience stores which stayed open twenty-four hours a day.

25. The trial court found:

> Massage parlors are generally located within four areas of Anchorage: along Spenard Road between Minnesota and International Airport Road, in the vicinity of 27th and Northern Lights-Bensen, Muldoon, and downtown. Most of the massage parlors currently doing business in Anchorage are located in neighborhoods which are primarily residential in nature; most massage parlors are situated on lots actually zoned for, or adjacent to lots zoned for residential purposes. Nearly all parlors are located in 'transitional areas' where traditional land use patterns are changing, and in 'buffer' zones which are lots located between incompatible land uses. Most massage parlors are located in older, marginal residential units which have been converted at low cost to that business use. Buildings used for massage parlors are distinguishable from those used for bars, cocktail lounges, and all night grocery stores in that the latter structures are more permanent in nature and were constructed for the

The other objective of the ordinances was to attempt to control prostitution activities occurring in massage parlors and physical culture studios. There was testimony by a vice squad officer that substantial prostitution activities occurred during the period of 2 a. m. to 6 a. m. There is a substantial difference between the atmosphere of plaintiffs' massage parlors and other all-night businesses.[26] We conclude that there was no error in the trial court's finding that AMC 10.40.015(A) was not in violation of the appellants' right to equal protection.[27]

■ Appellants also argue that AMC 10.40.015(D), which prohibits the intentional display or touching of either the masseur/masseuse's or patron's genitals is a violation of equal protection, because employees of bars and nightclubs are permitted to expose their genitals.[28] An Illinois court considered the constitutionality of a similar ordinance,[29] in *Wes Ward Enterprises, Ltd. v. Andrews*, 42 Ill.App.3d 458, 355 N.E.2d 131 (1976), and stated:

> The three subsections relating to masturbatory massages challenged by plaintiffs are designed to prevent criminal conduct, particularly the offenses of obscenity, prostitution and possibly public indecency. The requirements that both patron and employee preserve a minimum degree of modesty and avoid genital contact seem admirably suited to that end. Given the weakness of human nature, to

permit that which is prohibited here would invite criminal misconduct.

*Id.* 355 N.E.2d at 139. On similar reasoning, we find that there is a reasonable relation between the objective of control of prostitution and prohibiting exposure or touching of genitals. We also find that the distinction between massage parlors and physical culture studios and other businesses where employees are allowed to expose their genitals has a fair and substantial relationship to the purpose of the ordinance. The opportunity for prostitution is much greater when the masseur/masseuse and patron are alone in a private room, especially given the suggestive atmosphere often present.[30] The same opportunity does not present itself when the display of genitals takes place in a public setting such as a bar or nightclub. Therefore, we conclude that AMC 10.40.015(D) does not violate appellants' right to equal protection.

■ Appellants argue that AMC 10.40.015(B) and 10.40.015(D), which prohibits the locking inside of patrons and intentional exposure of a masseur/masseuse's genitals to a patron, and touching of a patron's genitals, is in violation of their right to privacy guaranteed by the ninth amendment to the United States Constitution and article I, section 22 of the Alaska Constitution.[31]

The Supreme Court held in *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65–66, 93

---

26. Penny Hazen stated in her deposition that her masseuses gave massages on sunken waterbeds covered with leopard skins. The investigative reports submitted by the Municipality of Anchorage show that all parlors offer massages in private rooms.

27. *See City of Spokane v. Bostrom*, 12 Wash. App. 116, 528 P.2d 500 (1974); *Cianciolo v. Members of City Council, Knoxville, Tenn.*, 376 F.Supp. 719 (E.D.Tenn.1974).

specific uses to which they are now devoted. Massage parlors, if operated 24 hours a day in buffer zones and transitional areas adversely affect neighboring residential uses through their flashing lights from illuminated signs, by increasing traffic congestion, and by generating noise from persons and vehicles visiting those parlors, especially between the hours of midnight and 6:00 a. m.

28. Chin Hilbers states in her affidavit that employees of Anchorage bars and nightclubs are allowed to expose their genitals to patrons.

29. The Peoria, Illinois ordinance provided:

> It shall be unlawful for any person, knowingly, in a massage establishment, to place his or her hand upon, to touch with any part of his or her body, to fondle in any manner, or to massage, a sexual or genital area of any other person . . . .

*Wes Ward Enterprises, Ltd. v. Andrews*, 42 Ill.App.3d 458, 355 N.E.2d 131, 134 (1976).

30. *See* note 26 *supra.*

31. This section of the state constitution provides: "The right of the people to privacy is recognized and shall not be infringed . . ."

S.Ct. 2628, 2639–2640, 37 L.Ed.2d 446, 461–62, *rehearing denied*, 414 U.S. 881, 94 S.Ct. 27, 38 L.Ed.2d 128 (1973), that the constitutional right to privacy extends only to fundamental rights. The Court stated:

> This Court, has, on numerous occasions, refused to hold that commercial ventures such as a motion-picture house are 'private' for the purpose of civil rights litigation and civil rights statutes.
>
> . . . . .
>
> [The] privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing.
>
> . . . . .
>
> Nothing, however, in this Court's decisions intimates that there is any 'fundamental' privacy right 'implicit in in the concept of ordered liberty' to watch obscene movies in places of public accommodation.

*Id.* (citations omitted). Other federal courts have relied on *Paris Adult Theatre I* in denying challenges based on the right to privacy to ordinances prohibiting bisexual massages,[32] holding that the right to privacy does not extend to places of public accommodation or commercial ventures. In *Brown v. Brannon*, 399 F.Supp. 133 (M.D.N.C.1975), aff'd, 535 F.2d 1249 (4th Cir. 1976) the court held that an ordinance prohibiting the massage of genitals for hire was constitutional, and that the ordinance did not violate any right to privacy. While there may be no right to privacy in this area under federal law we must also consider whether the separate state constitutional right to privacy has been violated.

The test for what interests are protected under Alaska's constitutional right to privacy was stated in *Smith v. State*, 510 P.2d 793, 796–97 (Alaska 1973); quoting from Justice Harlan's concurring opinion in *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 587–88 (1967):

> [F]irst that a person has exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'

The trial court found that the appellants made no showing of a subjective expectation of being able to expose their genitals or touch their patron's genitals, nor an expectation of giving massages behind locked doors.[33] There was also evidence that legitimate massage parlors had no desire to have their employees give massages while naked, or to give massages behind locked doors.

Further, there are legitimate reasons relating to the prevention of prostitution connected with the prohibition against genital exposure and touching and the disallowance of locked doors. We recently stated in *Summers v. Anchorage*, 589 P.2d 863, 870 (Alaska 1979):

> [W]e conclude that Summers' and Kitchen's privacy arguments should be rejected. Here Summers and Kitchen entered

**32.** *See Stratton v. Drumm*, 445 F.Supp. 1305 (D.Conn.1978); *Garaci v. City of Memphis*, 379 F.Supp. 1393 (W.D.Tenn.1974).

**33.** The trial court found:

Plaintiffs did not demonstrate the existence of a genuinely felt, subjective expectation of privacy in the exposition of their genitals to business invitees. Plaintiffs' motives in removing clothing are unrelated to fulfillment of private or personal preferences in clothing or lifestyle.

Plaintiffs did not demonstrate that society would regard as reasonable the expectations of privacy held by totally nude operators and masseuses. The greater weight of evidence supports the proposition that society does not expect or demand that its legitimate masseuses practice their trade in the nude and uninhibited by government regulation such as AMC 10.40.015(D).

Plaintiffs, operators and employees of massage parlors, failed to demonstrate the existence of a genuinely felt, subjective expectation of privacy in practicing their trade in locked treatment cubicles or areas.

Plaintiffs failed to offer facts sufficient to support a finding that society would regard as reasonable the expectations of privacy held by masseuses seeking to practice their trade in locked treatment areas or cubicles in violation of AMC 10.40.015(B). Curtains or unlocked doors which can be drawn or closed (but not locked) on request of either the operator or massage client sufficiently protect privacy interests society regards as reasonable in massage studios.

pleas of nolo contendere to complaints which, in identical language, charged that each had made 'an engagement with the complainant [at specified massage parlors] to have an act of sexual intercourse; and furthermore . . . did accept one hundred dollars from the complainant and removed her clothes. Given the commercial and public aspects of the conduct underlying their convictions, we conclude that neither Summers' nor Kitchen's constitutional rights of privacy have been infringed. More particularly, we hold that their rights of privacy under the Constitution of the United States and the Alaska Constitution do not encompass commercial sex in a public establishment.

We conclude that the "commercial and public" aspects of appellants' massage parlor activities remove the shield of privacy from these activities.

As a Missouri court in *Caesar's Health Club v. City of St. Louis*, 565 S.W.2d 783 (Mo.App.1978) stated in upholding an ordinance prohibiting genital massages:

> It is to be noted that the challenged ordinance does not prohibit persons from engaging in acts of massage as such, but from engaging in acts of massage involving sexual touching, for hire. And whatever may be said of the potential right of consenting adults to engage in private sexual massage activities, that, strictly speaking, is not the issue before us. Rather, it is the commercialization of such activities with which we are con-

cerned, and it is this commercial aspect which we believe removed them from the sphere of a protectable right of privacy. *Id.* at 787 (citations omitted). We find no violation of appellants' right of privacy in the ordinance.

 Lastly, appellants contend that the superior court erred in awarding the Municipality of Anchorage costs and attorney's fees.[34] They argue that the case is within the public interest exception in *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974). In *Gilbert*, we stated that it was improper to award attorney's fees where the plaintiff in good faith raised an issue of genuine public concern.[35] We have declined to overturn awards of attorney's fees where the issue litigated was not of a "public character."[36]

 We conclude that appellants' challenge to the ordinance regulating massage parlors and physical culture studios did not have the requisite "public interest," and the superior court did not err in awarding attorney's fees to appellees.[37] Unlike the general public interest in who is qualified to be a legislator, *Gilbert v. State*, 526 P.2d 1131 (Alaska 1974), or what the implied powers of a borough are, *Girves v. Kenai Peninsula Borough*, 536 P.2d 1221, 1227 (Alaska 1975), there is no general public concern over massage parlor-physical culture studio regulations. Those interested in the constitutionality of the ordinance are in large part limited to the persons who oper-

---

**34.** The appellees claimed $18,278 in attorney's fees, and $1,215.75 in costs. The trial court awarded $9,000 for attorney's fees and $1,215.75 for costs.

**35.** The plaintiff in *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974) challenged the Alaska constitutional requirement that a candidate for the legislature had to be a resident of the state for three years and a resident of the election district for one year. The constitutional provisions were upheld. *See also Anchorage v. McCabe*, 568 P.2d 986 (Alaska 1977); *Girves v. Kenai Peninsula Borough*, 536 P.2d 1221, 1227 (Alaska 1975).

**36.** *See Munroe v. City Council of Anchorage*, 545 P.2d 165, mod., 547 P.2d 839 (Alaska 1976) (rezoning of private land is not of public inter-

est); *Kelly Supply, Inc. v. City of Anchorage*, 516 P.2d 1206 (Alaska 1973) (action to change zoning of private building was not an issue of public concern).

**37.** We also find no merit in appellants' argument that attorney's fees should not have been awarded because the Municipality of Anchorage amended AMC 10.10.050(c), relating to warrantless searches, after a preliminary injunction was issued against enforcement of the provision as a result of litigation initiated by the appellants. The appellees prevailed on all four constitutional issues tried in the lower court, and the award of attorney's fees was half of the actual fees submitted by appellees. *See* notes 4 and 35 *supra*.

ate, work in, or frequent such establishments.

Affirmed as modified in this opinion.